# Faunce *versus* Burke & Gonder.

1. In a contract between the original contractors with the York & Cumberland Railroad Company and a sub-contractor with them, it was provided that the work should be subject to the supervision and control of the engineer of the Railroad Company; that he should make monthly estimates, four-fifths of which *value* to be paid to the sub-contractor, and when the work was completed, a final estimate; that the monthly and final estimates *as to the quantity, character, and value* of the work done shall be *conclusive* between the parties. And further, that if the contractor should not truly comply with his part of the agreement, or in case it should appear to the engineer that the work did not progress with sufficient speed, the other party should have power to annul the contract, and the unpaid portion of the road be forfeited by the sub-contractor, and become the property of the other party. It was *held,* that the award or decision of the engineer declaring the work forfeited was conclusive and binding on the sub-contractor. Moreover, the action of the plaintiff was in affirmance of the contract, and he cannot impeach the stipulations in it by which he obtained the contract.

2. The term *value* as used in the contract is to be distinguished from the term *price* as applied to the quantity of any of the different classes of work specified in the contract; and the engineer in making the monthly estimates, had the right to deduct from the quantity of work done, what he considered would equalize the part taken out as to quality and value with the whole work, and was not bound to allow the plaintiff for all work done, the price specified in the contract for that kind of work.

3. If the company had withheld the funds due to the sub-contractor, it would be unfair to take advantage of the forfeiture declared for want of prosecution of the work.

4. The retention of the 20 per cent. in case of forfeiture was intended as the

2 P

[Faunce *v.* Burke & Gonder.]

measure of reparation for the failure of the plaintiff to perform his contract, and was not intended as a mere *penalty.*

5. The payment, after the forfeiture, by one of the original contractors of the hands who had been employed by the sub-contractor, and furnishing money to carry on the work, was not a waiver of the forfeiture, and especially if he was then ignorant that the work had been forfeited.

ERROR to the Common Pleas of *Dauphin county.*

This was an action of covenant brought by Samuel Faunce *vs.* Michael Burke and Joseph Gonder, Jr.

Gonder, Burke & Co. were contractors with the York and Cumberland Railroad Company for the construction of their railroad from York to the west end of the Harrisburg Bridge. The plaintiff became a sub-contractor under them, for the graduation and masonry of section 17, from the west end of the Harrisburg Bridge, to a point a short distance below the Yellow Breeches Creek, about 2½ miles in length, and entered into an article of agreement with them, dated the 31st of August 1849.

The action was brought against Michael Burke and Joseph Gonder, Jr., as they alone executed the agreement. Faunce, the plaintiff, entered upon the work and prosecuted it for some months, when the defendants served upon him a notice declaring his contract forfeited and annulled, for reasons therein contained, the principal of which were that the work had not progressed with sufficient speed, and that plaintiff had allowed the use of ardent spirits upon the work, contrary to his agreement. The plaintiff alleged that this abandonment of his work was fraudulent, and that the reasons given for the same as set forth in the notice were groundless and untrue, and he further alleged that in the monthly estimates of the work done by him, by the procurement of the defendants he had not been allowed a full and fair measurement of his work. He therefore claimed damages for the work unpaid for, for the loss of the profits on the job, and for his losses in the erection of shanties, preparation of tools, &c., necessary for carrying on the work. The jury found for the plaintiff $908.10.

Articles of agreement made and concluded this thirty-first day of August, in the year eighteen hundred and forty-nine, between Samuel Faunce of the first part, and Joseph Gonder, Jr., Michael Burke, and others, of the firm of Gonder, Burke & Co., of the second part. The articles were signed by Gonder, Burke & Co., under seal, and by Samuel Faunce.

In the preliminary part of the articles of agreement it was, *inter alia,* stipulated that the work shall be subject to the supervision and control of the engineer of the York and Cumberland Railroad having charge of the work for the time being, who shall have power to order any part of said work which may, in his judgment, be defectively executed, to be remedied by the party of the first part, in any way that the said engineer may direct. It being understood, nevertheless, that said parties of the first and second part

[Faunce *v.* Burke & Gonder.]

shall give their personal superintendence to said work, and be subject to the same obligations for the proper execution thereof as if no such power of supervision as is hereby given to said engineer was provided for. The said party of the first part shall commence said work at such points and at such times as may be designated by said engineer, and shall at all times when required apply his force as said engineer may direct.

The articles further witnessed that the said party of the first part does hereby promise and agree with the parties of the second part, that he, the said party of the first part, shall and will complete in the manner above described, on or before the first day of June, in the year eighteen hundred and fifty, (A. D. 1850,) the above described work.

In consideration whereof, the parties of the second part do hereby agree with the party of the first part, that they shall and will, for doing the work aforesaid, well and truly pay or cause to be paid to the said party of the first part, his heirs, executors, or administrators, at the rate of fifteen cents (15 cts.) per cubic yard for earth; twenty-five cents (25 cts.) per cubic yard for loose rock; forty-five cents (45 cts.) per cubic yard for solid rock; two dollars and seventy-five cents ($2.75) per perch for masonry.

The payments thus and hereby stipulated to be made, shall be made in the following manner, that is to say, during the progress of the work, and until it is completed, there shall be a monthly estimate made by said engineer, of the quantity, character, and value of the work done during the month, and since the last monthly estimate, four-fifths of which value shall be paid to the said party of the first part, at the office of the party of the second part, in the town of York; and when the said work is so completed, and accepted by the said engineer, there shall be a final estimate made of the quantity, character, and value of said work, agreeably to the terms of this agreement, when the balance appearing to be due to the said party of the first part shall be paid to him upon his giving a release, under seal, to the said parties of the second part, from all claims or demands whatsoever, growing in any manner out of this agreement; and it is expressly understood that the monthly and final estimates of said engineer, as to the quantity, character, and value of the work done during the month, or since the last monthly estimate, and at the completion of the work, shall be conclusive between the parties to this contract. And the said party of the first part further agrees with the said parties of the second part, that in case the said party of the first part shall not well and truly, from time to time, comply with and perform all the terms herein before stated and stipulated on his part, to be performed and complied with, in manner and form, and within the time before mentioned, or in case it should appear to said engineer for the time being, that the work does not progress or go on with sufficient

[Faunce *v*. Burke & Gonder.]

speed, or in case of interference with said work by legal proceedings, the said parties of the second part shall have power to annul this contract, if they see fit so to do, of which three days' notice in writing shall be given to said party of the first part, when the foregoing agreements on the part of the parties of the second part, and every clause and part thereof, shall become null and void, and the unpaid portion of the road, (except when the contract is annulled in consequence of legal proceedings,) shall be forfeited by the said party of the first part, and become the right and property of the said parties of the second part, and the parties of the second part shall be at liberty and have right and authority, any thing to the contrary notwithstanding, to employ and set to work, or contract with any person or persons whomsoever, in the place and stead of the said party of the first part, and without interruption or interference from the party of the first part.

The right of annulling this contract is not mutual, but may be exercised by the parties of the second part only.

The notice to Faunce, after reference to stipulations in the agreement, proceeded—This is, therefore, to notify you, that for the reasons set forth by the chief engineer, and by the engineer having charge of section No. 17, in their said notices, as well as because you, the party of the first part, have violated the stipulations made with us, the parties of the second part, as regards the use of ardent spirits, by keeping and suffering to be kept and used ardent spirits, on said works, and in the houses and shanties occupied by you and by the workmen under you, on or near the portion of said road contained within the limits of said section No. 17, and have neglected to discharge from your employment every workman, or laborer, or boarding-house keeper, who has kept and used, or who does keep and use, on said works or near it, ardent spirits. And, also, because it appears to the engineer on said section for the time being, that the work on said section does not progress or go on with sufficient speed, and for the reason that the work on said section is delayed and neglected, and not pushed in a proper and suitable manner, or as contemplated by the said agreement between the parties of the first and second part. We, the parties of the second part to the said agreement, and in pursuance of the provisions of said agreement, do hereby declare that at the expiration of three days from and after the day you shall have received this notice, that the contract and agreement made by the said party of the second part with you, the party of the first part, is hereby annulled, and every clause and part thereof shall become null and void ; and the unpaid portion of the road, and the work done on the same, shall be forfeited by you, the party of the first part, and become the right and property of the said parties of the second part ; and that they will proceed to employ and set to work, or contract with any person or persons, whomsoever they

may think proper, for the completion of said work, in the place and stead of you, the said party of the first part : And you are hereby notified, that after the expiration of said three days, you are not to interrupt or interfere with any person or persons in or upon the said section No. 17.

Various points were proposed on part of the plaintiff, some of which were as follow :—

1. The estimates made by the engineer, though in accordance with the agreement of the defendants with the York and Cumberland Railroad Company, were incorrect, and contrary to the terms of the agreement of the plaintiff with the defendant, which provided for full monthly estimates of the quantity of work done ; and if such want of full estimates, delayed or embarrassed the plaintiff in his work, it would be a fraud upon him to allow the defendants to annul his contract on the ground of such delay, which was occasioned by their own violation of the agreement.

2. The covenants being mutual and dependent, the defendants cannot insist on the forfeiture if the jury believe they were the first to violate the agreement.

3. The penalty or forfeiture mentioned in the agreement was intended merely to secure a performance by the plaintiff, and it would therefore be unconscionable and against equity that it should be enforced in this action.

4. The conduct of Mr. Burke in encouraging the plaintiff to proceed with his work after the notice of abandonment, his furnishing money to buy powder on the 12th November, and inducing a portion of the hands to go on and work afterwards, under a promise to see them paid, and subsequently charging the wages and expenses of these hands to plaintiff, and his payment to the plaintiff's hands afterwards, are acts that may be regarded as a waiver of the forfeiture if any such existed.

5. If the jury believe that the estimates made by the engineer of the company were incorrect, they may be entirely disregarded, and the jury shall be at liberty to judge of the quantity of work done from all the evidence in the cause.

6. Forfeitures must be strictly construed, and the words used in the agreement, " the unpaid portions of the road shall be forfeited," will not warrant the defendants in withholding the price of plaintiff's labor.

Other points were proposed on the part of defendants, some of which were :—

1. That by the words of the contract the estimates were to be made by the engineer according to the quantity, character, and value of the work done monthly, four-fifths of which estimates, as the engineer *should value them* according to the quality and character of the work done, were to be paid to the plaintiff by the de-

fendants, and not four-fifths of the work actually done according to *the quantity.*

8. That as the contract was correctly and properly abandoned by the defendants, the plaintiff is not and was not entitled to recover the October estimate, or any part of the October estimate, and therefore the jury are not to allow the plaintiff any thing for the work remaining unpaid on said 31st day of October 1849.

PEARSON, J., answered plaintiff's points as follows :—1. By the terms of the contract, it is agreed that monthly estimates shall be made by the engineer of the company, of the quantity, character, and value of the work done during that month, or since the last estimate, four-fifths of which value are to be paid to the plaintiffs, and that monthly estimate thus made by the engineer is conclusive between the parties; and if such estimate fixed the amount to be paid, it would be final, unless the plaintiff would prove fraud, or such gross mistake as would amount to fraud; and if the amount was not fixed by the engineer, but the defendants paid according to the quality and quantity reported, and according to the price fixed in the contract, there would be no violation of the agreement on their part.    If the defendants had delayed the plaintiff in his work by withholding his funds, it would be unfair to take advantage of the forfeiture declared for want of prosecuting the work with due diligence; but we are unable to see any facts in this case to justify this point.

3. The penalty of forfeiture is inserted in the present contract, in the form usual and long established and known in this State and recognised in our Supreme Court.   It is presumed to be inserted with a view of compelling a rigid performance of the contract and turning the plaintiff off the work, and withholding all compensation stipulated for in the contract, should he fail on his part.    Equity will often relieve against a penalty or forfeiture, but could not interfere with the action of a party in such a case as this if the plaintiff has done or omitted any act which would justify the defendant in declaring the work abandoned.

4. We can see nothing in the conduct of Mr. Burke which would relieve from the forfeiture.    At the time of doing the acts referred to, there is no evidence to show he knew the work was abandoned, but, on the contrary, it is in proof he had just returned from Boston.   He furnished money to carry on his own job, which he was bound to prosecute, and encouraged the hands to continue at their labor.  Paying plaintiff's hands afterwards, under the circumstances detailed by Mr. Charles, is no waiver of the forfeiture, but an act of duty and justice to the laborers.

The *sixth* point is answered with defendant's *eighth.*

To the first and eighth of defendant's points he answered as follows :—1. The law is correctly stated in this point.  Such is the fair and true construction of the contract.

[Faunce v. Burke & Gonder.]

Plaintiff's *sixth* and defendant's *eighth* point:—As I construe this contract, the percentage could be retained till the work was finished, and such clause is common, if not universal, in all similar contracts. If the work was not finished by plaintiff, (of which there is no pretence,) and was properly declared abandoned and forfeited, then, in the language of the article, it was " the unpaid portion of the road" which was forfeited and became the right and property of the defendants, who had the power to take possession at the expiration of the three days fixed in the contract and carry it on themselves; but there would be no forfeiture of the money then earned, excepting the retained 20 per cent., which the plaintiff would be entitled to only on the completion of the work. The engineers had a right to deduct from the quantity what they considered would equalize the part taken out as to quality and value, with the whole; and having done so, their decision is binding on both parties in the absence of fraud or plain and palpable mistake. If there is money coming to the plaintiff according to such estimates after deducting his payments, that amount he is entitled to receive ; and the only difficulty in adjusting it is in distinguishing between the work done after the expiration of the three days' notice and that done prior, but subsequent to the October estimate, as the evidence shows that the plaintiff continued to labor for seven days after he should by the terms of his notice have retired from the job. The jury must judge whether that was done with the acquiescence or against the will of the defendants, and if acquiesced in by them, allow it, as they ultimately had the benefit of it, and that work was taken into the estimate. If done against their will, and in defiance of their notice and efforts to get the plaintiff off, he is not entitled to be paid for it.

Verdict for plaintiff for $908.10.

It was assigned for error, that the court erred in their answers to the first, third, fourth, and sixth points of plaintiff, and to the first and eighth points of defendants.

The case was argued by *Kunkle* and *McCormick*, for Faunce, plaintiff in error.—The court erred in their answer to the first point of the plaintiff. By the terms of the contract, the plaintiff was to receive fifteen cents per cubic yard for earth, twenty-five cents per cubic yard for loose rock, forty-five cents per cubic yard for solid rock, and two dollars and seventy-five cents per perch for masonry. He was to receive these prices for each and every yard and perch, taking the easy with the hard, the light with the heavy, and was to be estimated each month for every yard and perch of work done. It probably entered into the plaintiff's calculation, when he executed the contract, that the first part of the work would be the most profitable,

[Faunce *v.* Burke & Gonder.]

and that his monthly estimates of that work would furnish him the means and facilities of prosecuting more vigorously the more difficult and expensive work to be done afterwards.

The true interpretation of the words "quantity, quality, and value," in the contract is, that the estimates should include every yard and perch of work done by plaintiff during the current month at the contract price.  Quantity means, in the contract, the number of yards or perches; character, the kind of work, as earth or rock; and price, the sum fixed by the contract.  It could not have been intended by the parties that in addition to all the other provisions favoring the defendants, they should also have the extraordinary power of under-estimating the defendant to any extent, and then in their discretion declaring the work abandoned, and thus hold the earnings of the plaintiff.

In the first point of plaintiff, the court were also asked to charge "that if such want of full estimates delayed or embarrassed the plaintiff in his work, it would be a fraud upon him to allow the defendants to annul his contract on the ground of such delay, which was occasioned by their own violation of the agreement." To which they answered, "If the defendants had delayed the plaintiff in his work by withholding his funds, it would be unfair to take advantage of the forfeiture declared for want of prosecuting the work with due diligence; but we are unable to see any facts in this case to justify this point."

It was not the withholding of plaintiff's funds, but the short estimates of his work that the court were asked to refer to the jury as a reason for plaintiff's delay, if there was any; not the retention of any part of the amount of the monthly estimates, but that the estimate itself was of only part of the work done.  The response of the court was not therefore an answer to plaintiff's point, and was calculated to mislead.  The court also took from the jury the question as to whether the plaintiff's alleged delay was not occasioned by a prior violation of the contract by the defendants themselves.

The court erred in their answers to plaintiff's third and sixth points and defendant's eighth point.  There is no provision in the contract authorizing defendants to retain the 20 per cent. after they annulled the contract, and it would be unjust to allow them to do so.  The policy of the law does not regard penalties or forfeitures with favor: 2 *Greenleaf*, sec. 257.

The general rule in equity now is, that wherever a penalty is inserted merely to secure performance, it is not to be taken as liquidated damages; and the test by which to ascertain whether relief can be had in equity, is to consider whether compensation can be made or not: 2 *Story's Equity* 740, sec. 1314.

In the same book, sec. 1316, it is said, "In all these cases, if. the party obtains his damages, he gets all that in justice he is en-

[Faunce v. Burke & Gonder.]

titled to;" and in the same section: "In reason, in conscience, in natural equity, there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act, (the real object of the parties being the performance of the act,) that if he omits to do the act he shall suffer enormous loss, wholly disproportionate to the injury to the other party."

In sec. 1318 of same book, it is said, "Courts of equity will not suffer their jurisdiction to be evaded merely by the fact that the parties have called a sum damages, which is in fact and in intent a penalty; or because they have designedly used language and inserted provisions which are in their nature penal, and yet have endeavored to cover up their objects under other disguises:" 2 *Greenleaf* 211; *Newland on Contracts* 307.

By the terms of the contract, the defendants in certain contingencies had the power to annul the contract, but it is nowhere said in the contract that they shall retain the price of the work done as liquidated damages, but it was so considered by the court.

The loss of the defendants, if any, by the non-performance of the plaintiff could be compensated in damages, and this was a proper subject to be left to the jury.

A covenant by B that A would deliver two boat-loads of coal at different days, or in default that the covenantee might recover from B the sum of $240, was held to be a penalty, and not liquidated damages; and in the opinion of the court, "The general leaning is that such agreements shall be considered as penalties, so that a party shall recover such damages only as he shows that in justice and fairness he ought to recover:" Curry *v.* Larer, 7 *Barr* 470.

Where a contractor covenants with a company to construct a specific improvement at a price fixed, and subsequently, before the completion of the whole, the contract is rescinded, the most the contractor can claim in an action against the company, is compensation for the work done at the time the contract was rescinded, according to the price fixed in the contract: Monongahela Navigation Co. *v.* Fenlon, 4 *W. & Ser.* 205.

The court erred in their answer to the plaintiff's fourth point, in reference to the encouragement given by Burke, one of the defendants, to the plaintiff, after the notice of the abandonment, to proceed with the work, and in taking from the jury the question as to Burke's knowledge and intention in these acts.

*R. J. Fisher* and *J. A. Fisher*, for defendants.

The opinion of the court, filed July 3, was delivered by

CHAMBERS, J.—This action is brought by the plaintiff for the recovery of damages on account of the alleged violation of a contract between him and defendants for the construction of a section

[Faunce *v.* Burke & Gonder.]

of the York and Cumberland Railroad. The plaintiff was a subcontractor under the defendants, who had contracted with the York and Cumberland Railroad Company for the construction of the entire road of this company. The article of agreement between the parties contains many stipulations, specifications, and conditions; and also refers to the specifications in the contract between the defendants and the company, which are adopted as part of the contract between the parties in this suit. The plaintiff, after setting forth the agreement and specifications as the foundation of his action, avers a performance of the covenants on his part, and a willingness to perform the same; and that whilst he was, at great expense to himself, prosecuting the work according to the contract, the defendants fraudulently declared the said work abandoned, and the contract annulled, and dismissed the plaintiff from the execution and performance of his contract, and had failed to pay him for the work done according to the said contract. The defendants deny that they annulled the contract and suspended the work without cause, but for causes provided for in the contract, and which were essential to the progress of the work.

The agreement contained the stipulations and provisions that have generally, if not uniformly, formed a part of the contracts between States, corporations, and their contractors, for the construction of railroads and canals, as to the mode of conducting the work, estimating the progress of the work, and the payments to be made from time to time. A provision in this contract which was new, but no doubt proper and useful for the habits of the laborers engaged in the work, as well as for the due prosecution of it, forbid that ardent spirits be kept or used in any building occupied by the plaintiff or his workmen on or near his section, and plaintiff agreed that he would discharge any workman or laborer from his employment that did keep or use it. It was further provided that monthly estimates were to be made by the engineers of the York and Cumberland Railroad Company of the quantity, character, and value of the work done; four-fifths of which value should be paid over monthly to the plaintiff, and one-fifth retained till the work should be finally completed. It was further provided that the monthly and final estimates of the engineer as to the quantity, character, and value of the work should be final and conclusive between the parties; and that if the plaintiff should not well and faithfully perform every portion of his part of the contract, or if the engineer of the company should be of opinion that the work was not progressing as it should do, the defendants might give the plaintiff three days' notice that they had annulled the contract; and from that time the agreement was to become null and void, and they were at liberty to take possession of the work and carry it on, or give it out to others, as they might deem proper; and the unpaid portion of the road, forfeited by the plaintiff, become the right and

property of the defendants. Some of the provisions in this contract, at first view, seem stringent, arbitrary, and penal upon one of the parties, and without the mutuality of obligation and remedy which usually characterize contracts between individuals.

Stipulations and provisions of a like kind form a part of all contracts for the construction of canals or railroads by the parties engaged in undertakings of such character, magnitude, and public interest. It is for the advantage of the prosecution of such improvements and an accommodation to laborers and men of small capital, that the work should be given out in small sections, so as to admit of a large number of contractors, who both work and manage the labor of others on their job. It is important to the company and the public that the work should be prosecuted in all its divisions without delay; and with reasonable diligence and attention, so as to secure its completion at a time appointed. The failure of one or two contractors with their sections might suspend the use of the nearly completed improvement, with all its advantages, to the detriment of the company to an extent that the contractors could not indemnify or repair. To protect the company against such disappointments and failure of contract, it would be necessary to require from the contractors, who would also have to require from their sub-contractors, heavy and responsible security for the faithful performance of their contracts in the prosecution of the work. As such contractors are generally strangers, and men of small capital, the requirement of such security would be an obstacle that would deprive them of the opportunity of becoming contractors for the construction of parts of the road, and lessen to the company the number of competitors for the work. This is obviated by substituting the stipulations and provisions described, in place of personal security not attainable; and which stipulations might have the influence of inducing the diligent prosecution of the work, the faithful performance of the contract, and save the company from the evils of delay and from expensive and harassing litigation, that would retard the work and be onerous and ruinous to both parties. The engineers who were to make the estimates, judge of the progress of the work, and annul the contract, were not the agents of the defendants, but the officers of the company. They were familiar with such works, and from experience of the necessity of such powers to be delegated, were made the judges of the execution of the contract between the company and their contractors; and also between the principal contractors and their sub-contractors. In the execution of these powers, the engineer, by the contract of the parties, was made the absolute judge. The stipulations and provisions in this contract for its execution and termination, and the selection of the engineer as the arbitrator between the parties to adjudge finally on the contract, were all parts of the contract

assented to and adopted, as evidence of their intention and agreement, and as such were binding on them.    Stipulations of a like character were brought before this court for its consideration in the case of the Monongahela Bridge Company *v.* Fenlon, 4 *Watts &
S.* 205, and were sustained as legal and binding on the parties. It was there ruled that if the parties by contract appoint an arbiter to settle their difference, they are bound by his award, although he may be interested in the contract which was the subject of reference.    This action by the plaintiff on the contract is in affirmance of it, and it is not for him now to impeach the stipulations to which he assented, and by which he obtained the contract.    He was bound to know what he was doing when he entered into such contract; and as the court below rightly said, there was no evidence of any fraud or imposition in its procurement.

A great mass of evidence is brought up in the case by the record, and many points for the opinion of the court below were presented by the counsel on both sides.    The counsel for the plaintiff in error, with commendable discretion, have confined their assignments of error in this court to a few of the many points presented to the court below, which relieves this court from a review of much of the record, and which was not material to the parties or the public.

The plaintiff has assigned for error the answer of the court to the first and sixth points presented by his counsel, and the eighth point presented by defendant, and as they are connected by the subject-matter, they will be considered together.    The court did instruct the jury "that monthly estimates were to be made by the engineer of the company, of the quantity, character, and value of the work done during the month, or since the last estimate, four-fifths of which value were to be paid the plaintiff, and that monthly estimates thus made were conclusive between the parties; and if such estimate fixed the amount to be paid, it would be final, unless the plaintiff could clearly prove fraud or such gross mistake as would amount to fraud; and if the amount was not fixed by the engineer, but the defendants paid according to quality and quantity reported, and according to price fixed in the contract, there would be no violation of the agreement on their part.    If the defendants had delayed the plaintiff in his work by withholding funds, it would be unfair to take advantage of the forfeiture declared for want of prosecuting the work with due diligence, but there were no facts in the cause to support this point."    In answer to the sixth point the court said to the jury, "that the percentage might be retained till the work was finished, and that such clause is common, if not universal, in such contracts.    If the work was unfinished and the contract annulled, the unpaid portion of the road which was forfeited became the right and property of the defendants, but there would be no forfeiture of the money then earned, excepting the 20 per cent., which the plaintiff would be entitled

[Faunce v. Burke & Gonder.]

to only on the completion of the work. The engineers had a right to deduct from the quantity what they considered would equalize the part taken out as to quality and value with the whole; and having done so, their decision was binding on both parties, in the absence of fraud or plain and palpable mistake. If there is money coming to plaintiff according to such estimates after deducting payments, that amount he is entitled to recover." Was there error or not in the answers of the court recited?

By the contract, the engineer of the company was the agent of both parties to make the monthly estimates of the quantity, character, and value of the work done during the month. This estimate would be evidence to all concerned of the progress of the work and furnish a standard for payment according to contract, four-fifths of which value were to be paid the plaintiff. The import of the term *value*, as used in the estimate as well as in the provision for the payment of four-fifths thereof, is in such a contract significant, distinguishable from the term *price*, as contended for by plaintiff, to be applied to the quantity of any of the different classes of work specified in the contract.

The plaintiff excepts to the answer of the court below in saying "that the engineers had a right to deduct from the quantity what they considered would equalize the part taken out, as to quality and value, with the whole; and having done so, their decision is binding on both parties, in the absence of fraud or plain and palpable mistake." Whereas, as the plaintiff contends, the estimate should have included every yard and perch of work done by the plaintiff, at the contract price, and that there had been a large deduction of rock excavation from plaintiff's work by the engineer to equalize what was done with that remaining to be done. Where the heavy part of such work consists of excavations of rock or clay in deep or side cuts, and which by the contract are to be paid for at a certain price per yard, we can well understand that the first part of that work, at or near the surface, could be excavated with more facility and with much less labor and expense than the lower parts of the work. The expense of taking out the lower part of the rock, more solid and less accessible, might require three times or more of labor and expense than what would be required to excavate and remove the same quantity of rock at or near the surface. As the contract price for the entire excavation of solid rock was 45 cents per cubic yard, embracing all of that description to the lowest depth of the grade as well as to the surface, it would have been an unequal estimate to have estimated the work first done at the surface at the full price for all the work of that description, and left the last half to be estimated at the same price. To have made such an estimate, from which 20 per cent. was to be retained, would have given the plaintiff more than the full value of the work done, and left a sum

[Faunce *v.* Burke & Gonder.]

totally inadequate in the hands of the defendants for their indemnity against the labor of plaintiff to prosecute and complete his contract. It would have been made the interest of the plaintiff, after receiving estimates and payments according to the construction claimed by him, without regard to equalization and value, to have withdrawn from his job and leave his unfinished work, which could not, as he would be aware, be completed at any price near what he would be entitled to recover under his contract on the final estimate, the 20 per cent. retained.

The disadvantage and injustice were too great to be overlooked by those whose attention had been given to the construction of such works ; and to provide against it, we suppose, the stipulation was introduced into contracts to estimate according to quantity, quality, and value. This appears to this court as reasonable, and, as a part of the contract, was valid and binding on the parties, unless, as was said by the court below in their charge, there was fraud or plain and palpable mistake. It was open to the plaintiff to prove *either*, to relieve himself from the estimates and decision of the engineer, and which would have been facts for the consideration of the jury.

It is alleged by plaintiff that his first point was not answered by the court as to the effect of short estimates on the ability of the plaintiff to progress with the work : to which the court said, that if the defendants had delayed the plaintiff in his work by withholding his funds, it would be unfair to take advantage of the forfeiture declared for want of prosecuting the work with diligence ; but that they were not able to see any facts in the case to justify this point.

The short monthly estimates were only injurious to the plaintiff as they lessened the amount of his monthly payments, to enable him to prosecute his work with diligence. It was the funds alleged to be withheld that he was in need of, and the court did answer this point substantially, and as favorable to the plaintiff as if the language used by the counsel had been adopted by the court.

The answer of the court to the third point presented is also assigned for error, as to the penalty or forfeiture inserted in the contract, which the plaintiff alleges was merely to secure performance, and that it would be unconscionable and against equity that it should be enforced in this action. The court said that "equity will often relieve against a penalty and forfeiture, but would not interfere with the action of a party in such a case as this, if the plaintiff has done or omitted any act which would justify the defendants in declaring the work abandoned."

There is an inclination in courts to consider a specified sum as a penalty in contracts, as when such sum is evidently intended as a mere collateral security for the payment of a different sum which is the real debt ; or where it is evidently intended to be in the nature of a mere penalty ; or where it is uncertain what the parties

really intended; in which latter case the courts have considered and inquired into the reasonableness of the provision for the payment of liquidated damages.

The reservation of the power to annul the contract was rendered necessary by the nature of the work to be constructed and the relation of the parties, and we may say here, as was said by this court in the case of the Monongahela Navigation Company v. Fenlon, before cited, that without such a provision as this, plaintiff would never have obtained the contract. It was his substitute for personal security, which it is probable he could not procure. We cannot suppose that the company or their contractors for the entire work would have agreed that the execution of the several contracts, their construction, and any disagreements between the parties in the progress of the work, should be left open to innumerable suits at law, and to the determination of juries unacquainted with the work and such contracts, with all the vexation, expense, and delay attendant upon such litigation. Such a stipulation of forfeiture, under the adjudication of a competent engineer, who was supervising the work, was, we think, a reasonable provision for securing the progress of the work, and a limited indemnity to the defendants in the retained 20 per cent., to allow the employment of other contractors or laborers to complete according to contract the unfinished section. The plaintiff was allowed, under the charge of the court, to recover the balance that might be supposed to be due him exclusive of the retained 20 per cent. It is, we think, to be intended by the parties to this contract, from the peculiar nature of it and the uncertainty of damages, that the measure of reparation on the failure of plaintiff to perform, and the forfeiture as adjudged by the engineer, were the 20 per cent. retained out of the estimates. There are no words evincing an intention that the sum reserved should be considered only as a penalty. The plaintiff chose to contract with such a stipulation, and it was in his power to be relieved from it by the due prosecution of his work, and entitle himself on its completion to the whole sum payable under the contract. Why shall the law undertake to make a new agreement for the parties which they did not intend to make for themselves. They were the best judges of the amount of the injury to be sustained by the interruption of the work and the failure of plaintiff to perform his agreement—an injury uncertain and incapable of estimation until the whole work was completed, and was a proper subject for a stipulated reparation.

The parties contracted upon the faith of that mode of adjustment through the estimates of the engineer and the retention of one-fifth and the forfeiture of that unpaid portion, and it is not for the court to make a different agreement for them than what they intended and did make for themselves; or allow a jury to disregard the stipulation and reparation provided by their estimate

[Faunce *v.* Burke & Gonder.]

of the supposed injury, at a time subsequent to the transaction and remote from the place, unless there was fraud or palpable mistake.

The fourth error assigned in relation to the payments by Mr. Burke and the effect thereof is not sustained.

As this court is of opinion that the errors assigned are not sustained, the judgment of the Court of Common Pleas is affirmed.