## Commonwealth v. Eastern Paving Company.

*Contracts — Arbitration clause — Contract with Highway Department — Revocation of arbitration clause—Appeal to Dauphin County Court.*

1. An arbitration clause in a contract between the Highway Department of the Commonwealth and a contractor which provides that 'all disputes shall be referred to the State Highway Commissioner and Attorney-General, or First Deputy Attorney-General, whose decision shall be final, cannot be revoked by the contractor.

2. If the contractor, without submitting a dispute under the arbitration clause, makes his claim to the Auditor General and State Treasurer for settlement under the Act of March 30, 1811, P. L. 145, they must dismiss his claim, and no appeal lies from their decision to the Court of Common Pleas of Dauphin County.

3. The fact that the arbitrators named in the agreement are officers of the Commonwealth does not affect the validity of the agreement, and does not make it revocable by the contractor without the consent of the Commonwealth.

4. Where a party accepts an arbitrator with full knowledge of the facts on which his interest or bias is based, he thereby waives his right to object on these grounds.

5. The personal privilege conferred by the Act of March 30, 1811, P. L. 145, upon the creditors of the Commonwealth may be waived; and a contractor who has agreed to submit all matters in dispute between himself and the Commonwealth to arbitrators specifically named thereby waives the privilege conferred upon him by the act.

6. Arbitration clauses should not be lightly set aside.

Rule to show cause why the appeal from the settlement of the Auditor General and State Treasurer should not be dismissed and stricken from the record. C. P. Dauphin Co., Commonwealth Docket, 1925, No. 111.

*James O. Campbell,* 1st Deputy Attorney-General, for plaintiff.

*Walter Biddle Saul* (with him *Beidleman & Hull),* for defendant.

WICKERSHAM, J., May 24, 1926.—The defendant in this case entered into a written contract with the Highway Department of the Commonwealth of Pennsylvania, by the Secretary of Highways, dated May 10, 1919, for the construction of a road in Salem Township, Luzerne County, known as Route No. 4, section 1-*B.* The said contract contains, on page 140 thereof, the following provisions for the arbitration of claims arising thereunder:

"In case any question or dispute arises between the parties hereto respecting any matter pertaining to this contract, or any part thereof, said questions or disputes shall be referred to the State Highway Commissioner and Attorney-General, or First Deputy Attorney-General, of the Commonwealth of Pennsylvania, whose decisions shall be final, binding and conclusive upon all parties without exception or appeal; and all right or rights of any action at law or in equity under and by virtue of this contract, and all matters connected with it and relative thereto, are hereby waived by the contractor."

The defendant filed a statement of claim against the Commonwealth of Pennsylvania under the provisions of the Act of March 30, 1811, P. L. 145, in the amount of $28,000, founded upon the failure of the State Highway Department to comply with the said contract. To this statement of claim the Commonwealth, by its Attorney-General, filed an affidavit of defence on behalf of the Highway Department without raising an issue as to the facts, contending that, under the provisions of the contract from which we have quoted, it was mutually agreed by and between the plaintiff and defendant—referring at length to the arbitration clause found on page 140 of said contract. The defendant refused to submit the whole or any part of said claim to the arbitrament of the arbitrators for which provision was made in the above-quoted section of the contract. The Auditor General and State Treas-

Commonwealth v. Eastern Paving Company.

urer reached the following conclusion after referring to the arbitration clause of the contract:

"From the above we find that, under the provision of the contract above referred to, the question in dispute must be arbitrated in the manner there set out; that this was not done nor was same requested by the claimant, although the State Highway Department stands ready and willing to submit the same to arbitration; that nothing has been determined in the manner provided in the contract to be due the claimant; we, therefore, find there is nothing now due and owing by the Commonwealth to the claimant under said contract, and herewith disallow its claim and dismiss its petition for settlement."

From the settlement of the Auditor General and State Treasurer the defendant appealed to this court. The Attorney-General, on Oct. 26, 1925, filed its petition, setting forth the facts as above stated, and praying for a rule to show cause why the defendant's appeal from the settlement by the Auditor General and State Treasurer of its account against the Commonwealth, as filed to the above number and term, should not be dismissed and stricken from the record because the said Eastern Paving Company irrevocably agreed in its written contract with the Commonwealth to submit its said claim to arbitration and therein waived all right of exception or appeal to the decision of arbitrators thereon, whereupon a rule was granted to show cause, to which we have referred.

This case came on to be heard and was argued at length by the First Deputy Attorney-General and by counsel representing the defendant. The questions involved are:

1. Can the contractor revoke such agreement without the consent of the Commonwealth and submit its claim, based upon said contract, to the Auditor General and State Treasurer for settlement under the Act of 1811?

2. Having so submitted such claim for settlement, which was dismissed by the Auditor General and State Treasurer because of said arbitration agreement, without consideration of the merits of the claim, and the applicant referred to its remedy by arbitration, does an appeal lie to the Court of Common Pleas of Dauphin County?

It appears that, after the completion of the work contracted for and the payment of portions of the consideration thereof from time to time, a semifinal estimate was made and a part of the amount so found due was paid to the contractor, but a portion thereof was retained by the Commonwealth because of the alleged failure of the contractor to conform with the specifications, in that it had failed in certain designated areas to furnish and lay a concrete base of the depth or thickness required by the specifications. The contractor was notified of such defects and called upon to remedy the same, but has failed to do so. The question thus at issue has not been submitted to the arbitrament of the arbitrators as provided for in the contract.

On May 5, 1926, the following stipulation was filed:

"Now, May 5, 1926, it is hereby stipulated by counsel for the plaintiff and counsel for the defendant that the contract upon which the claim in suit is based contains, as a part of the specifications attached and made part thereof, the following:

"Engineer to be referee. To prevent misunderstanding and litigation, the engineer shall decide any and all questions which may arise as to the quality and acceptability of materials furnished and work performed and as to the manner of performance and rate of progress of said work, and shall decide

all questions which may arise as to the interpretation of any or all plans relating to the work and of the specifications, and all questions as to the acceptable fulfillment of the contract on the part of the contractor; and the engineer shall determine the amount and quantity of the several kinds of work performed and materials furnished which are to be paid for under the contract, and such decision and estimate shall be final and conclusive, and such estimate, in case any question shall arise, shall be a condition precedent to the right of the contractor to receive any money due under the contract. Any doubt as to the meaning of, or any obscurity as to the wording of, these specifications and contract will be explained by, and all directions and explanations requisite or necessary to complete, explain or make definite any of the provisions of the specifications or contract and to give them due effect, will be given by the engineer."

It thus appears that if, for any reason, the contractor is not satisfied with the final conclusion of the engineer, he may still appeal to the arbitrament of the Secretary of Highways and the Attorney-General, or the First Deputy Attorney-General.

We think the arbitration clause contained in this contract provides an exclusive remedy for the adjudication of the claim in question and is not revocable. In Werneberg v. Pittsburgh, 210 Pa. 267, an arbitration clause in a municipal contract provided that "in case any question or dispute shall arise between the parties of the second part hereto and the said city, party of the first part hereto, under the said plans, drawings, . . . general conditions or terms of this contract respecting the quality, or value of the work, or labor done, or materials furnished or to be done or furnished, or any of the terms, stipulations, covenants or agreements herein contained, or respecting any claim for extra work, or respecting any matter pertaining to this contract, or any part of the same, said question shall be referred to the director of the department of public works of the city, whose decision thereon shall be final, binding and conclusive upon all parties, without exception or appeal, and all right or rights of any action at law or in equity under and by virtue of this contract, and all matters connected with and relative to the same, are hereby expressly waived by the parties of the second part." It was held: "Where a municipal contract provides that all matters in dispute shall be submitted to the director of the department of public works, whose decision shall be final, and it appears that, after the work under the contract was completed, a dispute arose, and the director then in office sat as an arbitrator and heard testimony, but before rendering his decision was removed from office, and then refused to take any further action as arbitrator, the arbitration clause became a nullity and the jurisdiction of the courts attached. In such a case, as soon as the director assumed to act as an arbitrator, he did so, not as an official, but also as an individual, and, although removed from office, he should have concluded the arbitration by rendering his decision." It was further held "that the measurement clause and the arbitration clause were not inconsistent with each other, inasmuch as the former applied merely to the measurement of the amount of work performed, while the latter applied to 'any question of dispute' between the parties growing out of the contract." It was said by Mr. Justice Mestrezat, writing the opinion of the Supreme Court, page 274: ". . . It is well settled in this State that parties to an executory contract may agree to submit their differences arising out of the contract to a person or tribunal named, whose decision or award shall be final, and that when they do so they cannot seek redress elsewhere until the arbiter agreed upon has been discharged, either by the rendi-

tion of an award or otherwise: Commercial Union Assurance Co. v. Hocking, 115 Pa. 407."

The ruling in the case last referred to is supported by Monongahela Navigation Co. v. Fenlon, 4 W. & S. 205; Connor v. Simpson, 104 Pa. 440; Hostetter v. City of Pittsburgh, 107 Pa. 419, opinion by Clark, J.; Commercial Union Assurance Co. v. Hocking, 115 Pa. 407.

It was held in Monongahela Navigation Co. v. Fenlon, 4 W. & S. 205: "If parties by contract appoint an arbiter to settle their differences, they are bound by his award, although he may be interested in the contract which was the subject of reference." Referring to the justice and reason of such ruling, it was said by Rogers, J., page 213: "We have grounds for believing that the company would not have agreed that, in case of a disagreement between them and the contractors, the latter should be at liberty to appeal to the uncertain determination of a jury, where they would have to encounter all the prejudices, which are too apt to be entertained against all corporations or monopolies, as they are called, of every description; a tribunal, too, which, from its very constitution and the nature of the controversies which would probably arise, is utterly unfit, however well disposed, to do justice between them. Such a contest as this is precisely the one in which a person who is perfectly acquainted with the whole work, and the merits of the case, is most competent to decide."

In Hostetter v. City of Pittsburgh, 107 Pa. 419, the contract provided that the referee should be the mechanical engineer of the city. Held, "that the submission to the mechanical engineer was authorized by the terms of the contract, . . ." and "that said agreement for submission to the mechanical engineer was valid, and his award under it, as above set out, of binding force." Writing the opinion of the Supreme Court, it was said by Mr. Chief Justice Mercur, page 432: ". . . The binding effect of a similar agreement to refer to a person named all questions which may arise on an executory contract is affirmed in McGheehen v. Duffield, 5 Pa. 497; Reynolds v. Caldwell, 51 Pa. 298; O'Reilly v. Kerns, 52 Pa. 214; Howard v. Allegheny Valley R. R. Co., 69 Pa. 489; Connor v. Simpson, 104 Pa. 440. This last case arose on an agreement to grade a portion of a railroad bed. It contained a clause appointing the chief engineer of the railway company a common arbiter, to whom all and every question of difference between the parties growing out of the contract should be referred, and whose decision should be final and binding on both parties. The contractor entered on the work, and for some reason abandoned it in an unfinished condition, whereby the company claimed damages. It was held, although the submission was prospective, yet it was special and to the arbitrament of a person designated, and was binding on the parties."

In Hartupee v. City of Pittsburgh, 97 Pa. 107, the arbitrator named was the mechanical engineer of the board of water commissioners of the city with whom the contract was made.

In Reynolds v. Caldwell, 51 Pa. 298, there was a contract between a railroad company and a sub-contractor. It was agreed that the estimates of the work should be made by the engineer of the railroad company and be conclusive between the parties. Held, that the clause of arbitrament was binding, and that if the engineer undertakes to act as umpire and fraudulently injured the plaintiff, the remedy was by an action against him, the guilty agent, and not by an action on the contract.

In further support of the ruling above referred to, see Gowen v. Pierson, 166 Pa. 258, in which it was held—and we think this case applies particularly

to the instant case—that: "Where parties to an executory contract agree that all disputes arising in relation thereto shall be first submitted to the arbitrament of one or more persons named, they are bound by the terms of the submission, and *cannot seek redress elsewhere until the person or persons so chosen have been discharged by having made an award or otherwise:*" Com. v. Pittsburgh, 204 Pa. 219; Ruch v. York, 233 Pa. 36; Curran v. Philadelphia, 264 Pa. 111.

We are further of the opinion that if the arbitration agreement is supported by a valid consideration and the arbitrators are therein named, its provisions will be enforced as to all matters within the scope of the agreement, unless fraud, accident or mistake in executing the contract, or fraud in connection with the award, is proved, or unless the arbitrators are relieved by agreement of the parties or by death or by refusal to act: McCune v. Lytle, 197 Pa. 404; Kann v. Bennett, 234 Pa. 12, 13; Frederick v. Margwarth, 221 Pa. 418, in which it is held: "Where an agreement to arbitrate is a part of a contract into which the parties have entered, neither party can revoke it without the consent of the other."

We are further of the opinion that the fact that the arbitrators named in the agreement are officers of the Commonwealth does not affect the validity of the agreement and does not make it revocable by the contractor without the consent of the Commonwealth: Curran v. Philadelphia, 264 Pa. 111; Hallock v. Lebanon City, 224 Pa. 359; Clark & Sons Co. v. Pittsburgh, 217 Pa. 46, in which case the arbitrator named in the contract for the building of a reservoir was the Director of Public Parks in Pittsburgh, who made an award in favor of the plaintiff which the city refused to pay, alleging that certain items allowed for extra work were not covered by the contract, and that the arbitrator had no authority to waive liquidated damages for delay. Held, that such an award was binding upon the city: Drhew & Bell v. Altoona City, 121 Pa. 401.

It is strongly contended by the defendant that the arbitration clause is unjust and void for the reason that the Secretary of Highways and the Attorney-General or his deputy have been named as arbitrators; that any State official charged with the function of drawing a contract for State work has it in his power to nullify the constitutional and statutory guarantees by inserting a provision in a contract which states that he, the person in charge of the work for the Commonwealth, shall decide every question that arises. Reference is made to 3 Blackstone's Commentaries, 16, which holds that an arbitrator is a disinterested person to whose judgment or decision matters in dispute are submitted by consent of the parties. With this contention we are not in accord. It is generally held that where a party accepts an arbitrator with full knowledge of the facts on which his interest or bias is based, he thereby waives his right to object on these grounds: 2 Ruling Case Law, § 20, page 375; Reynolds v. Caldwell, 51 Pa. 298; Monongahela Navigation Co. v. Fenlon, 4 W. & S. 212, wherein it was held as follows: ". . . It is a general rule of law, founded on the first principles of natural justice, that a man cannot be a judge in his own cause. But to this rule there are some exceptions; for the party himself may waive, and thereby preclude himself from any objection to a decision on that account; for if the party himself waive it, or agree to the submission, either at the time or by previous contract, he cannot afterwards make the objection that the plaintiff was a judge in his own cause. Thus, in Matthew v. Ollerton (Comb. 218) it is ruled that the defendant may refer to the plaintiff himself, if he will. And Dolbin, J., said he remembered a case where a gentleman's steward brought an action in

his master's name, and the defendant entered into a rule, by consent, to pay what the plaintiff should see fit; and my Lord Hale held it to be a good submission. *Vide* Hunter v. Bennison (Hardres, 44) to the same point. So Sergeant Hards took a horse as a deodand from the bailiff of the Archbishop of Canterbury, for which the Archbishop brought his action, and that coming to a trial at the assizes in Kent, the Sergeant offered to refer the matter to the Archbishop himself, which was accordingly done by rule of court; the Sergeant afterwards applied to the court to have the award set aside on the principle that it is unjust that a man should be judge and party; but the court thought the objection of no force and refused the motion: Kyd on Awards, 42. Thus it appears that whether the objection be well taken will depend on the contract; and if at the time it was entered into the plaintiffs knew that the engineer was a stockholder, they may be considered as having waived it; and this is certainly so, as regarded the ordinary estimates which it was his duty to make during the progress of the work." To the same effect, see Bowman Bros. v. Stewart, 165 Pa. 394, 397; Ruch v. York, 233 Pa. 36; Kennedy v. Poor, 151 Pa. 472, 474.

This waiver of objection to the arbitrator because of his official capacity is voluntary. "He (contractor) is not bound to accept a contract, any more than he is forced to make one with an individual:" Faunce v. Burke & Gonder, 16 Pa. 469, 480; McManus v. Philadelphia, 201 Pa. 632, 636. Writing the opinion of the Supreme Court in the case of Faunce v. Burke & Gonder, *supra*, it was said by Chambers, J., page 480: "This action by the plaintiff on the contract is in affirmance of it, and it is not for him now to impeach the stipulations to which he assented, and by which he obtained the contract. He was bound to know what he was doing when he entered into such contract:" Payne v. Roberts, 214 Pa. 568, 580; English v. Wilmerding Borough School District, 165 Pa. 21, 23.

It was earnestly contended by counsel, not only in his typewritten brief, but at the oral argument in court, that the defendant, in the absence of the clause in the contract relied upon by the Commonwealth, would have a right to proceed in accordance with the provisions of the Act of 1811, and if not satisfied with the settlement of the Auditor General and State Treasurer, he could then appeal to this court under the subsequent provisions of the act; that the very first section of the act provides that any claim against the Commonwealth is to be adjusted according to law and equity and not strictly according to law, and that the courts of Pennsylvania are not inclined, sitting as equity chancellors, to enforce arbitration clauses, citing Kaufmann v. Liggett, 209 Pa. 87, which was an injunction to restrain proceedings under the Landlord and Tenant Acts of 1772 and 1863, and which holds that, in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored and not the landlord, etc. The lease also contained a provision that the rental for an extension of the lease for a period of years should be determined by arbitrators. It was said by Mr. Justice Potter, writing the opinion of the Supreme Court, page 102, that equity will not compel an arbitration, and this upon the very good ground that the courts remain open to the parties, with better provisions for securing justice than are possessed by arbitrators. We fail to see the controlling authority of this case in the matter we now have under consideration. The defendant has agreed with the Commonwealth that all matters in dispute between them, and "all right or rights of any action at law *or in equity* under and by virtue of this contract, and all matters connected with it and relative thereto, are hereby expressly waived by the contractor." For the reasons above stated,

we think the defendant cannot now repudiate this part of his contract, and having chosen by agreement one tribunal in which all his disputes are irrevocably to be determined and settled, he cannot now choose another: Reynolds v. Caldwell, 51 Pa. 298; Monongahela Navigation Co. v. Fenlon, 4 W. & S. 205.

The Act of 1811 was passed for the benefit of the State's creditors, not for the benefit of the State. Without it the right to sue the sovereign did not exist, but the sovereign acquired no right to sue under it. It provides a method whereby the Commonwealth may be sued, subject to the condition that the claim may first be presented to the Commonwealth's fiscal officers. This is a personal privilege for the benefit of the defendant and other creditors of the Commonwealth which it, the defendant, may waive (Case v. Dunmore, 23 Pa. 93), and which the defendant has waived by the contract in which it agreed to submit all matters of dispute irrevocably to the arbitrators named therein. It seems to us, therefore, that it is peculiarly fitting that the arbitrators to whose arbitrament the defendant has agreed to submit all questions of dispute should be the Secretary of Highways, who could pass upon engineering problems and other facts involved in the dispute, and the Attorney-General or the First Deputy Attorney-General, whose duty it is, under the Administrative Code, to pass upon questions of law involving the duties of the several State and administrative officers: Com. v. Lewis, 282 Pa. 306. Such is the course pursued under the arbitration agreement; it is such a determination that the contractor and the Commonwealth have agreed to accept.

In order to expeditiously handle the disputed questions which arise in the construction of highways with reference to the interpretation of plans and specifications and the conformity of materials proposed for use and with work done on such plans and specifications to the best interest of the public, this contract provides for the determination of all questions arising thereunder during the progress of the work by the engineering executive, formerly chief engineer, or his representative (paragraph 55 of specifications accompanying contract), all of which, together with any other disputed questions, may, as we have before stated, be subsequently presented to the arbitrators named in the contract proper, whose decision shall govern and be final without any appeal. The plan of these highway contracts is that the final submission of all questions in dispute to the named arbitrators is in the nature of a review of questions that have been determined by the engineering force— a plan that is in the interest of the public as well as of the contractor: Curran v. Philadelphia, 264 Pa. 111. The insertion of an arbitration clause in contracts for public work is established practice, has been successfully operated, and, therefore, should not be lightly set aside: Monongahela Navigation Co. v. Fenlon, 4 W. & S. 205, 210, in which it was said: "This stipulation, or one like it, forms part of every contract with the agent for the public works of the Commonwealth, and it is believed it has been adopted by every private company in the State and in the neighboring states engaged in similar undertakings. Experience, which is the best test, has shown its beneficial effects, and, indeed, its absolute necessity; for without it, it is next to a certainty the company would be constantly harassed with vexatious and ruinous litigation:" Payne v. Roberts, 214 Pa. 568, 580; English v. Wilmerding Borough School District, 165 Pa. 21, 23.

We find nothing in support of the further contention of counsel for the defendant that it is against public policy to permit a State official, without expressed authorization of an act of assembly, to deprive a citizen of a right secured to him by the Constitution and by a legislative enactment and granted

Commonwealth v. Eastern Paving Company.

to the citizen as a favor by the sovereign, and that the so-called arbitration provision in the contract between the citizen and the State is illegal and unenforceable because there is no authority in any State official to insert it; nor has our attention been directed to any decision in Pennsylvania in support of these allegations contained in the brief of defendant's counsel. On the contrary, a careful review of the authorities referred to in this decision leads to a different conclusion. We, therefore, conclude, and so hold—

1. The contractor cannot revoke the agreement to arbitrate without the consent of the Commonwealth, and submit its claim, based upon said contract, to the Auditor General and State Treasurer for settlement under the Act of 1811.

2. Having so submitted such a claim for settlement, which was dismissed by the Auditor General and State Treasurer because of said arbitration agreement, without consideration of the merits of the claim, and the applicant referred to its remedy by arbitration, an appeal does not lie to the Court of Common Pleas of Dauphin County.

The rule to show cause granted in this case is, therefore, made absolute and the appeal of the defendant is dismissed.                                      •

From Homer L. Kreider, Harrisburg, Pa.