## Reynolds *et al.*, Executors, *versus* Caldwell.

1. Where a contract between a principal contractor with a railroad company and a sub-contractor provided that about the first of each month the estimate of the work should be made by the engineer and be conclusive between the parties, that payment should be made on such estimate, and that in any dispute the decision of the chief engineer should be conclusive, waiving right of action or remedy in law, so that the decision shall, in the nature of an award, be final and conclusive. *Held*, that had there been no provision for an arbitrament or no waiver of a right to sue at law, it was an essential prerequisite to an action for work done that the estimate should be made by the engineer.

2. If there was a final estimate, which was erroneous, and the contractors' covenants were broken, an action at law could not be maintained upon it, but resort must be had to the tribunal appointed by the agreement.

3. The clause of arbitrament was binding, although recourse to the tribunal selected was not reasonably possible by circumstances which the party could not control; and although the engineer refused to act, and although there were such gross and palpable mistakes in the estimates as amounted to fraud in the engineer.

4. If the engineer undertook to act as umpire, and fraudulently injured the plaintiff, the remedy was by action against him, the guilty agent, and not by action on the contract.

5. The farthest limit of our cases is to hold that when one of the parties has refused to join in the choice of arbitrators or prevented a chosen umpire from acting, the other party may come into a court of law.

6. The engineer having determined the amount due to the plaintiff according to his articles, and he alleging it to be incorrect, the burden is upon him to show it so, and this is to be done only by the revision of the engineer.; if he cannot obtain this, the defendants are not responsible on their covenants.

Error to the Court of Common Pleas of *Armstrong county*, in which this was an action of covenant by Thomas H. Caldwell and H. J. Arnold, trading as Thomas H. Caldwell & Co., against Washington Reynolds and Addison Leech, executors, &c., of David Leech, deceased, tried before the Hon. James Campbell, President of the 18th district.

David Leech and others having contracted by sealed articles with the Allegheny Valley Railroad Company to construct the whole railroad of said company, sub-let, also by sealed articles, to the plaintiffs the construction of section 43 of said road.

After specifying the kind and manner of work, there were the following, amongst other stipulations in the articles :—

" On or about the first day of each month, during the progress of the work, the estimate made of the quantity and relative value of the work done on this section by the engineer of the railroad company, shall be conclusive upon the parties hereto of the amount of said work. And within ten days after the second party shall have procured a certificate of such estimate from the railroad company, the said second party shall pay to the first party hereto 85 per cent. of the amount of such estimate, agree-

ably to the prices contained in this contract, in cash, at their office in the city of Pittsburgh, unless the said second party shall elect to make payments along the line·; in either case the time to elapse between the receipt of the current monthly estimates and payments herein stipulated, shall not exceed ten days; * * * * and when all the work embraced in this contract is completed, agreeably to the specifications, and in accordance with directions and to the satisfaction and acceptance of the engineer, there shall be a final estimate made by the chief or associate engineer of the *quality, character and value* of said work, agreeably to the terms of this agreement, when the balance appearing due to said party of the first part shall be paid to said first party, 10 per cent. of the whole amount of this contract, in the capital stock of the Allegheny Valley Railroad Company at par, and the balance in cash, in accordance with the foregoing stipulations, upon their giving a release under seal to the said second party from all claims or demands whatsoever against said second party, growing in any manner out of this agreement. * * * *

["And it is mutually agreed and understood that the decision of the chief engineer shall be final and conclusive in any dispute which may arise between the parties to this agreement, relative to or touching the same; and each and every of said parties do hereby waive any right of action, suit or suits, or other remedy at law or otherwise, by virtue of said contract, so that the decision of said engineer shall, in the nature of an award, be final and conclusive on the rights and claims of said parties."]

During the pendency of the suit H. J. Arnold died.

The claim of the plaintiffs in this suit was for work done on section 43, according to the contract.

Estimates had been made from month to month and paid to the plaintiffs, they frequently complaining of their amount. A final estimate was made, but the plaintiffs refused to take the amount, and this suit was brought upon the allegation that there were errors and gross mistakes, which would amount to fraud.

There was evidence, as to errors in the estimates, asking the chief engineer to settle the dispute, and his declining to act further; tender of release by the plaintiffs, and tender of alleged balance due by defendants.

The important question in the case was as to the right of the plaintiffs to maintain an action at law for the recovery of their claim.

The charge of the court below, and the points of the defendants and their answers hereafter stated, present the case as considered and decided in the Supreme Court.

The judge below, after deciding that the suit could be sustained against Leech's executors alone, said:—

[Reynolds *v.* Caldwell.]

" The defendants further contend that the action cannot be maintained by the plaintiff, because his right of action, or resort to a court of justice is expressly taken away by the terms of the instrument itself on which suit is brought. The clause relied on for this is in the following words, and it is the last in the article of agreement :—(See the clause on page 299, in brackets.)

" This is a sweeping clause, binding the parties to submit all matters in dispute to the umpirage of the chief engineer, and makes his decision an award in the matter submitted final and conclusive, and further precludes either of the parties from resorting to suits, actions or other remedies in law, or otherwise. Now, the plaintiff here seeks a recovery in affirmance of this contract by an action of covenant, and directly in the teeth of this covenant, which he is as much bound to affirm as any other clause in the article. The plaintiff cannot escape the binding force of this clause, unless recourse to this tribunal is rendered no longer reasonably possible by circumstances over which he had no control, and which he could not prevent by reasonable diligence on his part. Then, unless a reference was prevented by the act of the defendant, or, secondly, by the refusal of the chief engineer to act on proper application made to him, or, in the event of the death or absence of the engineer, so that a reference to him could not reasonably be had ; or, thirdly, by such gross and palpable mistake as would amount to a fraud, this action cannot be maintained, and your verdict ought to be for the defendant. A demand made on the engineer, a year or two after the work was done, to go instantly upon the ground and make a remeasurement of the work, and decide an alleged dispute, without notice to the opposite party, or giving reasonable time to the engineer, would not authorize the plaintiff to resort to an action at law, nor, if the demand was made merely to get clear of the tribunal of his own choosing, and not in good faith to obtain an adjudication on an alleged dispute, it would not avail. If notice had been given to the opposite party, and a reasonable time had been allowed the engineer to examine and make his decision, and then if he had refused, the plaintiff would have been liberated from the obligation of the contract, and could have brought his action. The demand made by Mr. Cochran was to go upon the ground, remeasure it and make the settlement, or refuse to do so, and the reply of the engineer was that he could not go then, and spoke of the stakes being removed. He was not asked to appoint a time to hear the parties and decide the case. This demand was not sufficient to enable the plaintiff to bring his suit, unless you find that his refusal was an unqualified one. With that exception we recollect of no application of the plaintiff to

[Reynolds v. Caldwell.]

the chief engineer or his associate, to correct errors or decide disputes. The proper time to correct errors of the assistant engineer in charge of the work would have been as soon as the errors were detected, and while the work was in progress, when the quantity, quality and character of the work could have been examined and ascertained, and the errors corrected. Had an application been made to the chief engineer, during the progress of the work, and had he refused to act, or if he was absent, so that he could not be procured or found, and the railroad company had refused to appoint or provide another, the plaintiff would be at liberty to bring his suit. Was the reason that the plaintiff did not apply to the chief engineer, that he was absent and could not be found from the time he discovered the alleged errors of the assistants till he was found at the Monongahela House, in 1858? If so, you will then inquire whether there were such gross errors in the estimates, made by the assistant engineers, as would amount to a fraud.

"The evidence on this subject is for you; but we may say that all measurements made of the ground, years after the excavations were made upon a supposed natural surface of the ground, or without an actual measurement and survey of the surface and shape of the ground before and after the work was finished, must be imperfect and uncertain; a previous knowledge of the ground, without a survey and an actual measurement after, could only approximate the amount and quality of the excavation, and would be dangerous to rely on to establish gross errors of the engineer whose business it was to measure and return the estimates of the work as it progressed; but this testimony is referred to you, together with that of Mr. Weimer, and from it you are to determine whether gross mistakes, equivalent to a fraud, were made by the engineer in charge of the work. If you find that no such gross errors were committed, there is an end of the plaintiff's case, except so far as relates to the balance due the plaintiff in cash, agreeably to the last, or what the plaintiff claims as the final estimate. As to that, if you believe, from the testimony, that a tender of cash and stock in the road, as provided in the contract, was made to the full amount due, and that the tender has been kept up, and produced in court, there can be no recovery in this suit for that; but, if you find that there was a final estimate and settlement of the work, upon payment of the final estimate the plaintiff was bound to give a release, under seal, discharging the party of the second part from all liability under the contract. Plaintiff alleges he has tendered a release. The evidence on this subject is likewise referred to you. We simply instruct you that the payment of the final estimate is dependent upon the giving of the release. If it has not been tendered, plaintiff cannot

[Reynolds *v.* Caldwell.]

recover that balance in this suit. If he has, so far as that is concerned, he may. But if the engineer was absent, or if, for any cause, a resort could not be had to the tribunal appointed and provided in the article for a portion of the time between the discovery of the alleged errors and the bringing of this suit; and if at the time, and before the bringing of this suit, the want was supplied, and the plaintiff could have applied to the chief engineer, in the manner provided in the article, for the correction of alleged errors or the settlement of disputes, and if the plaintiff had notice of the fact before this suit was brought, this suit cannot be sustained.

" The question is, could the plaintiff have resorted to the tribunal provided in the article at the time suit was brought ; and not whether he could or could not have done so at some previous point of time.

" If the plaintiff had commenced his action at a time when it was not reasonably possible to have had the dispute referred to the engineer, he could have sustained it ; but if he waited till he could have referred it to him, and had notice of that fact, he cannot sustain the suit. ' You will then inquire whether the defendants, before this suit was brought, gave notice to the plaintiff to refer to the chief engineer, and whether there was such engineer to whom reference could be made if they did, and, if such reference was practicable, the plaintiff was bound to submit the dispute to him, and cannot recover in a suit at law. If the statement in the notice to refer was not true, and if it was a mere trick, it would not avail, and the plaintiff may still, so far as concerns this offer and notice, recover.'

" Then, if the plaintiff, at the time of bringing this suit, could have had it referred to any chief engineer of the railroad company, and did not, no matter how many or how gross mistakes were made, we cannot correct them here unless they had been referred to him, and the gross errors amounting to a fraud had been made by him in deciding on the dispute. The jury will observe that we are not trying, in the first place, the merits of this cause, but whether we have a right to try it at all, and if, under all the evidence in the case and the instructions we have given you, the plaintiff could have had his disputed facts submitted to and adjudicated by the chief engineer, we cannot try it, and your verdict ought to be for the defendant. If he could not, at the time he brought this suit, and there were such gross errors as amounted to a fraud on the plaintiff committed, you will correct such errors by allowing him such damages as he has sustained. This covers the most material part of the case, but there are a number of points which we proceed to answer."

Points of the defendant : " 11th. Fraud must be proved, and

[Reynolds *v.* Caldwell.]

cannot be presumed, and even if the engineers were guilty of fraud in taking the estimates, their fraud cannot affect David Leech, nor entitle the plaintiff to recover, unless the jury find that Leech agreed to and participated in such fraud, of which fact there is no evidence in this case."

Answer: "Fraud cannot be presumed, but must be proved, or facts must be found from which fraud may be fairly inferred. It would appear that Leech was one of the original contractors of this road himself, and that the plaintiff was a sub-contractor under him, at a less price, and the difference in price would seem to have been his profits. He was therefore interested equally with the plaintiff, though perhaps in a less degree, in having the largest amount of work returned in the monthly estimates. It would seem hard, therefore, that he should suffer for the gross mistakes or fraud of the officers of the railway company, unless he had sanctioned, or participated in, or at least had knowledge of it. Still, if there were such gross errors as amounted to a fraud, and they could not be referred to the chief engineer, as we have explained, or if he refused to correct them on final estimate, the plaintiff may recover the amount of such errors in this suit. But if plaintiff could have referred them to the chief engineer, and did not, he cannot recover."

"12th. There is no evidence in this cause of fraud, or such gross mistakes as will vitiate and destroy the estimates made in this case, or entitle plaintiff to recover in the action."

Answer: "We answer that whether there was or was not such gross fraud, is for the jury. There is some evidence of it, and it is submitted to you under the instructions already given."

"14th. There is no evidence in the case of such gross mistake as would amount to a fraud, and thereby enable the plaintiff to escape the stipulations of his contract, by which all disputes arising thereunder, were to be submitted to and decided by the chief engineer, and, therefore, this action cannot be sustained, and the verdict of the jury should be for the defendants."

Answer: "We answer this point that whether the plaintiff can maintain this suit depends upon the finding of the jury. We cannot take the facts from them, but unless the plaintiff made all reasonable efforts to get his claim decided by the engineer up till the bringing of this suit, he cannot recover; if he did and failed, he may."

There was a verdict for the plaintiff for $5075. The charge of the court and the answers to the above points were amongst the errors assigned.

*Golden & Neale, Foster* and *McConnell,* for plaintiffs in error. —Can an action be maintained under any circumstances? The plaintiff cannot impeach the contract; that is the foundation of

his suit, and the most prominent provision in it, is the stipulation that the engineer is to be the final arbiter. This is the parties' own law; they are bound by it and no other: Harris *v.* Liggett, 1 W. & S. 305. The plaintiffs cannot set aside the above provision and affirm those which are beneficial to him: Monongahela Navigation Co. *v.* Fenlon, 4 W. & S. 205. The plaintiff cannot proceed without showing an award of the engineer: Fox *v.* Hempfield Railroad Co. (per Justice Grier) Pittsb. Leg. Jour. May 30th 1857; Faunce *v.* Gonder, 4 Harris 480; Snodgrass *v.* Gavitt, 4 Casey 221–24; McGeehan *v.* Duffield, 5 Barr 499; McCahan *v.* Reaney, 9 Casey 535; McGrann *v.* N. Lebanon Railroad Co., 5 Id. 82; Lauman *v.* Young, 7 Id. 306; Irwin *v.* Shultz, 10 Wright 74; McDermot *v.* Jones, 2 Wallace 2. The fraud of the tribunal selected to adjudicate, if any existed, cannot relieve the plaintiffs from their covenant; their remedy would be against the arbiter. Nor would the death or absence of the arbiter work that effect—both parties assumed that risk, and no provision was made against it. If Leech hindered the appointment or adjudication of the engineer he would be liable in damages in case, or if the engineer acts the plaintiff may sue in debt on the award, 9 Casey 534. But even if no remedy exists outside the contract, that is no reason for this action, as a party might waive *all* remedy and trust to his employer. Leech nor Caldwell had any voice in selecting the engineer, and are not responsible either to the other for his acts; as possibly might be the case with the railroad company, if the suit was against them. Leech suffered or was advantaged by the estimates of the engineer just as Caldwell would be. Why should he perpetrate or aid in perpetrating a fraud in the estimates?

There *was* a final estimate, and on that the plaintiffs should have sued. But if this be denied, the plaintiffs made no effort to obtain one. They never asked Leech to join in a submission. Leech never hindered a correction of the monthly or final estimates.

The testimony of estimates made after work was done or of the judgment of witnesses cannot overthrow solemn contracts or estimates of engineers made at the time the work was progressing and was completed. But if there be such errors, Leech is not responsible for them unless he participated in them.

*S. A. Purviance, J. Boggs* and *J. V. Painter*, for defendants in error.—All the cases referred to by plaintiff in error as to the right to maintain this action contain the exceptions noted in the charge of the judge below. The finding of the jury is conclusive of fraud or gross mistakes amounting to fraud. There was no final estimate such as is contemplated by the contract. The final estimate is to be of the quality, character and value of the whole

[Reynolds *v.* Caldwell.]

work completed. Here was but a simple addition of the several monthly estimates. The failure to have such an estimate remitted the plaintiffs to their original rights, which cannot then be affected by an offer to submit the matter to the engineer.

The opinion of the court was delivered, February 9th 1866, by STRONG, J.—This was an action of covenant brought by Caldwell against Leech to recover compensation for the graduation, masonry, and other work done on section 43 of the Allegheny Valley Railroad. Leech with others had been contractors for the entire work of the line; and Caldwell was a sub-contractor with them for the work on one section.

The articles of agreement fixed very precisely the mode in which alone the sums due from time to time to the sub-contractor should be ascertained. This it did by reference to the estimates that the railroad company had agreed with the primary contractors should be made as the work progressed. And it was stipulated that on or about the first day of each month during the progress of the work, the estimate made of the quantity and relative value of the work done on the section, by the engineer of the railroad company, should be conclusive between the parties to the agreement, of the amount of said work, and that within ten days after the procurement of a certificate of such estimate from the railroad company, the defendant should pay eighty-five per cent. of the amount of such estimate, agreeably to the contract prices. The agreement then went on to declare that when all the work should be completed there should be a final estimate made by the chief or associate engineer of the quality, character and value of said work, agreeably to the terms of the agreement, when the balance appearing due to the sub-contractors should be paid upon their giving a release. After some other provisions, the contract concluded with the following clause:—" And it is mutually agreed and distinctly understood, that the decision of the chief engineer shall be final and conclusive in any dispute which may arise between the parties to this agreement, relative to or touching the same, and each and every of said parties do hereby waive any right of action, suit or suits, or other remedy in law or otherwise, by virtue of said covenants, so that the decision of said engineer shall, in the nature of an award, be final and conclusive on the rights and claims of said parties."

In view of these covenants, irrespective of the stipulation last quoted, it is plain the plaintiff can recover for work done by him under the contract only after estimates made by the engineer of the railroad company. Those estimates, it was agreed, should determine the quantity of work done, and its *value*, or the sum due to the sub-contractor. It was those that the defendants

1 P. F. SMITH—20

[Reynolds *v.* Caldwell.]

covenanted to pay, and nothing else. Had no provision been made for an arbitrament, and had there been no waiver of right to sue at law, it was still an essential prerequisite to any action for work done under the contract that estimates of it should be made. It was assumed by both parties that they would be made, and they were. The amounts certified as due in those that were made monthly during the progress of the work, the plaintiff received, and he gave written acknowledgments of the payments, but he refused to accept the balance appearing to be due by the final estimate, alleging that it was erroneous both in the quantity and in the classification of the work. Doubts were suggested in the argument whether there was in fact a final estimate, such as was called for in the articles of agreement. That there was seems to us, however, very clear. It is needless to consider the question now. If there was not, it is certain the plaintiff has no such cause of action as he asserts. But assuming that there was a final estimate, that it was erroneous, and that the covenants of the defendants were broken, the great question of the case remains whether in view of the last clause in the contract any action at law could be maintained upon it. Provisions similar to this are often introduced into such contracts, and they have more than once been under consideration in this court. Even when much less stringent than the present, they have been held effective to preclude any resort to an action at law. In The Monongahela Navigation Company *v.* Fenlon, 4 W. & S. 205, the agreement to submit did not contain any express waiver of the right to sue at law for a breach of the contract. It only declared that in any dispute between the contractor and the company, the decision of the engineer should be obligatory and conclusive without further recourse or appeal, yet it was held that no action by one party against the other would lie for a breach of the agreement; that the only resort was to the appointed tribunal. To the same effect are Faunce *v.* Burke & Gonder, 4 Harris 480, and other cases more recently decided. The doctrine of these cases was apparently acknowledged as a general rule, by the learned judge of the court below, but he applied it with most important and erroneous exceptions. He instructed the jury that the plaintiff could not escape the binding force of the clause in the contract, unless recourse to the tribunal selected was rendered no longer reasonably possible by circumstances over which he had no control, and which he could not prevent by reasonable diligence on his part; that unless a reference was prevented by act of the defendant, or, secondly, by the refusal of the chief engineer to act on proper application made to him; or, thirdly, by such gross and palpable mistake as amounted to fraud, the plaintiff could not recover. Thus a wide door was opened enabling the plaintiff to escape from the stringent covenant into which he had entered, and by which he had bound

[Reynolds *v.* Caldwell.]

himself to waive any right of action, suit or suits, or other remedy at law, and to leave the decision of any dispute that might arise relative to or touching the agreement to the final determination of the engineer. So in the answer to the points presented by the defendants below, the same exceptions to the rule laid down in Navigation Company· *v.* Fenlon were constantly asserted. In this we are of opinion there was error. It nowhere appears in the case, nor is it alleged, that a reference of any dispute between the parties to the chief engineer of the railroad company was prevented by the defendant. If it had been thus prevented, perhaps the plaintiff might have resorted to a court of law, notwithstanding his waiver of such a right. But the plaintiff rests upon the allegations that the engineers were guilty of fraud, or made gross mistakes in their estimates equivalent to fraud, and that it was impracticable to procure the chief engineer to decide the controversy respecting the accuracy of the estimates after it had arisen. The court recognised these things, if found to have existed, as relieving the plaintiff from his obligation to waive a suit at law. But what had the fraud of the engineers, if any, to do with the plaintiff's covenants? How could the misconduct of the chosen arbitrator deprive the defendants of a right secured to them by the contract—a right of exemption from liability to any suit upon it? If the engineer undertook to act as umpire and fraudulently injured the plaintiff, he had a remedy by action against the *guilty agent*, but not by suit on the contract. He cannot punish the defendants for a fault of which they are innocent. And how could the mistake of the engineer alter the covenants of the parties? By agreeing to refer to him they took the risk of his mistakes. They were both interested in having the estimate made as large as possible, and both were injured by an under-estimate, if one was made. It was in view of such contingencies, as the plaintiff alleges have happened, that the parties renounced their right to any other remedy against each other, than the arbitrament of the chief engineer. None of our cases recognise the mistake or fraud of the appointed umpire as sufficient to relieve a party from the necessity of resorting to him exclusively. The farthest limit to which they have gone is to hold that when one of the parties has refused to join in the choice of arbitrators, or has prevented the chosen umpire from acting as such, the other party may come into a court of law. The case cited from 4 W. & S. 205 does not hold that the fraud or mistake of the engineer in making the estimate enables the party to withdraw the controversy from his arbitrament. All that was said on this subject is a remark of Judge Rogers, that it was not pretended the estimate made by the engineer was made in bad faith, or that there was any evidence of gross mistake. He did not say what would have been the effect had there been such evidence. And that was a case where the action was brought against the company

[Reynolds *v.* Caldwell.]

whose engineer was the chosen umpire. There is more reason for holding such defendants responsible for the bad faith and mistakes of their own officer, than there is for making these defendants suffer for the fraud or errors of the engineer of the Allegheny Valley Railroad Company, over whom they had no control, and who was an entire stranger to the contract. A reference to the engineer of a railroad company has even been said to be a reference to the company itself: Ranger *v.* Great Western Railway Company, 27 Eng. L. & Eq. R. 35; and hence it may with some force be argued that if he is guilty of bad faith, they ought not to be protected by his action. But when parties agree to refer to the engineer of a third person, and to be bound by his umpirage, his fraud or mistake ought not to be permitted to augment the rights of one party to the agreement against the other. We hold, therefore, that the court below erred in the answers given to the defendants' eleventh, twelfth and fourteenth points. The fraud or mistake of the engineers of the Allegheny Valley Railroad Company in making the monthly and final estimates, if there was such fraud or mistake, did not release the plaintiff from his contract, and enable him to bring a suit at law to enforce any covenant of the defendants.

There was error also in the instruction given respecting the impracticability of obtaining a revision of the estimates by the chief engineer. The contract was not that the parties waived any right of action or suit at law, only in the event that it might prove reasonably impracticable to obtain a decision of the chief engineer of the railroad company. The possible difficulties of obtaining such a decision were in view of the parties when the contract was made. The engineer has determined the amount due the plaintiff in accordance with the articles of agreement. But the plaintiff alleges that the determination is incorrect. The burden is upon him to show that it is so, and he has but one way in which to show it. That is by the revision of the chief engineer. If he meets with difficulties in obtaining that, or if he cannot obtain it at all, it is his misfortune, not the fault of the defendants; nothing for which they are responsible upon their covenants. The engineer having made an estimate, the question whether it was erroneous or not, is a question between him and the plaintiff. There is, as before remarked, no evidence that the defendants ever interposed any obstacle in the way of a revision of the estimates by the chief engineer. On the contrary, the proof is that they requested the plaintiff to have a revision made, and requested it at a time when the engineer was at hand, and could have made it. No effort was however made to obtain such action, until about three years after the final estimate was made, when it was manifestly impossible to ascertain the amount of work done in the graduation, or to classify it, if the quantity had been known.

[Reynolds *v.* Caldwell.]

Under such circumstances even an unqualified refusal of Mr. Roberts, in the fall of 1858 (if the jury had any evidence that there was such a refusal), to go upon the road and make a measurement of it, did not leave the plaintiff at liberty to sue upon the contract. And there was no evidence from which the jury could find such a refusal. If they found it, as they must have done, they not only found it without evidence, but against evidence, and there was error in submitting the question to them. We hold that there was nothing in the request made to Mr. Roberts, or in his answer, that relieved the plaintiff of his waiver of any right of action on the contract, especially as the request was so long delayed. The delay was not excused by the absence of the engineer. He was indeed away part of the time towards the end of the work, but the proof is that he was there a part of the time during the last year, and there after the work was completed, and no application was made to the railroad company for his presence at any time to revise the estimates, or for the appointment of any other engineer in case of his absence.

It is of prime importance that parties be held to their contracts. If permitted to cut themselves loose from an onerous stipulation, because it may be inconvenient to perform it, there can be no certainty in agreements. The obligation of a covenant is not changed by the fact that it has not worked the results which were anticipated.

There are other assignments of error in this record, which we need not notice in detail. What we have said will probably put an end to the case, and the other questions attempted to be raised are therefore of no importance.

Judgment reversed, and a *venire de novo* awarded.

Agnew, J., dissented.