## O'Reilly *versus* Kerns.

1. Under a stipulation in a contract between a railroad or canal company and a contractor, or between the contractor and sub-contractor, that the engineer shall decide disputes between them in relation to the execution of the contract, and the kinds of work, the decision of the engineer is final and conclusive.
2. The contract provided that alterations directed by the engineer should " be made as directed." Such alterations are within the jurisdiction of the engineer to determine and estimate.
3. Alterations directed did not abrogate the contract or substitute a new one, they were within the original contract.
4. But work done after the job had been taken off the contractor's hands by the company, was not done under the contract, and payment for it might be recovered in *assumpsit*.

ERROR to the Court of Common Pleas of *Berks county*.

This was an action of *assumpsit*, commenced February 9th 1858, by Edward Kerns and Thomas Kerns, against Patrick O'Reilly.

O'Reilly was a contractor for building the eastern division of the Lebanon Valley Railroad; the Kerns were contractors under him for four sections. Their contract, which was under seal, contained the following stipulations :—

" To prevent all disputes, it is hereby mutually agreed, that the said engineer shall in all cases determine the amount or quantity of the several kinds of work which are to be paid for under this contract, and the amount of compensation at the rates herein provided for ; and also that the said engineer shall in all cases decide

[O'Reilly v. Kerns.]

every question which can or may arise, relative to the execution of this contract on the part of said contractors and his decision shall be final and conclusive and without appeal.

"It is further agreed, that when the work shall be increased by the enlargement of any part of the same, or by any contingent work, which said engineer may deem necessary to facilitate the execution or render the work in any particular point conformable to local circumstances, beyond what is contemplated in this contract; such increase or contingent work shall be paid for at the same rate as similar work herein contracted for, or if not similar to work herein contracted for, it shall be paid for as an extra item, according to the estimate of the engineer."

The work being completed, the engineer made a final estimate amounting to $103,408.31. The defendant paid the plaintiff $104,279.50, being $871.19 in excess of the estimate.

The action was for work claimed to be not within the terms of the contract, for which it was alleged a new contract had been substituted.

The plaintiffs presented several items of claim, of which the court (Woodward, P. J.,) submitted two only to the jury, as follows:—

"1. The written contract provided for 'bridge' masonry of rock, hammer dressed and ashler broken range at $5.50. Under the direction of the engineer, the bridge masonry put up by the plaintiffs was 'rock ashler range work.'

"In the engineer's estimate, the price allowed for the work actually done was $6.80. It is said that the increase of $1.30 in the price was inadequate, and there is evidence that 'ashler range' masonry was worth $10 or $12. If the parties treated this change in the work as a change to that extent, of the written contract, then the plaintiffs ought to recover that sum which, under the evidence, would be equal to the increased cost beyond what they have received. The fact of the allowance of the increased price in the estimate beyond the rate fixed in the contract, is relied on as evidence that the contract itself had been replaced by a new agreement; the value of the fact is left to the jury to decide. If the parties agreed that $6.80 should be the price of the new masonry, and the plaintiffs have been paid at that rate, there can be no recovery. But if there was no such agreement— if the plaintiffs were employed to do new work, entirely different from that specified in the contract, and if they went on and performed it without any stipulation, express or implied, either that they should receive the contract price or that the engineer should adjust the increased compensation, a case would be presented excluding the engineer's authority to decide conclusively the rights of the parties. He was made the arbiter of questions growing out of the written contract. It was not contemplated that he

[O'Reilly *v.* Kerns.]

should be the ultimate tribunal in a controversy growing out of a new, unanticipated and substantive parol agreement. He was to ascertain and report the 'amount and quantity' of the work specified in the contract, at the contract rates. But he was clothed with no power to impose the terms of a future bargain, or to fix the rate of compensation the plaintiffs should receive for labour performed by the plaintiffs under new stipulations with the defendant.

" It is entirely for the jury to ascertain, in view of the evidence, whether the kind of work contracted for was changed—if so, whether a new rate of compensation was agreed upon—what the compensation ought to be, if the parties did not adjust it, and what amount the plaintiffs should recover, if anything, beyond the moneys they are shown to have received.

" 2. A claim is made for work done upon the railroad in June 1857, after the company accepted it from the hands of the contractors. It is alleged that the plaintiffs were employed by the defendant to perform certain labour, after all the work under the contract ceased and after all parties had treated the sections of the plaintiffs as completely finished.

" This is spoken of in evidence as ' extra work' done on township roads and bridges, in ballasting the track, and in making ditches. If this was in reality ' extra work' not embraced in the written contract; and if it was done at the instance and request of the defendant, the court are aware of no reason, if it has not been paid for, which should prevent a recovery by the plaintiffs of its value in this action. They could not maintain a suit on the contract, and would have no remedy, unless they have it here. The jury will judge of the evidence. Allowance for this item can only be included in the verdict if they find that the plaintiffs did the work: that the defendants employed them to do it: that it has not been paid for, and that it was aside from and in addition to that originally contracted for."

These portions of the charge were assigned for error, and sufficiently present the questions controverted and decided in the Supreme Court.

There was a verdict for plaintiff for $2660.

*J. Hagenman, J. S. Richards* and *John A. Banks,* for plaintiff in error.—The contract designed that all the work done, whether specifically mentioned in the contract or not, should be settled for according to the determination of the engineer. His decision was therefore final if there were no fraud.

The work then being done under the contract, there was no evidence of a parol agreement to vary the written instrument and enable the plaintiff to sue in *assumpsit.* The parties cannot seek redress from any other tribunal than that provided for in the

[O'Reilly v. Kerns.]

contract, viz., the engineer: Monongahela Bridge Co. v. Fenton, 4 W. & S. 205; Lauman v. Young, 7 Casey 306-309; Fox v. Hempfield Railroad, 14 Leg. Int. 148; Faunce v. Burke, 4 Harris 469-480; Snodgrass v. Gavitt; 4 Casey 221-224; Lubrick v. Lyter, 3 W. & S. 365; McGheehen v. Duffield, 5 Barr 597; N. Lebanon Railroad Co. v. McGrann, 7 Casey 530; McCahan v. Reamey, 9 Id. 535; Irwin v. Shultz, 10 Wright 74; Hardie v. Belger, 11 Id. 60; Memphis Railroad Co. v. Wilcox, 12 Wright 161; Mason v. Bridge, 2 Shepley 468; Dubois v. The Delaware and Hudson Canal Co., 4 Wend. 285; s. c. 12 Wend. 384; 15 Wend. 87.

Where the special parol contract is not alleged in the declaration, the plaintiff cannot recover on it: Irwin v. Shultz, *supra.*

*A. G. Green* and *J. Hoffman,* for defendant in error.—The loss of plaintiff resulted from a breach of the contract by the company. If redress must be sought on the covenant, the company may break the contract as they please, and have the liability fixed by their own agent: Lauman v. Young, 7 Casey 306; Lehigh Coal and Navigation Co. v. Harlan, 3 Id. 420; Dubois v. Delaware and Hudson Canal Co., 5 Id. 82.

The "extra work" was done after the road had been accepted by the company, and clearly did not come within the contract.

The opinion of the court was delivered, April 26th 1866, by

THOMPSON, J.—It is not necessary to cite authorities for what is so well settled, as that where a railroad or canal company and its contractors, or in a contract between original and sub-contractors, it is agreed that to prevent disputes the engineer of the work shall in all cases determine the amount or quality of the several kinds of work which are to be paid for under the contract, and decide every question which can or may arise relative to the execution of the contract on the part of the contractor, that his decision has been uniformly held to be final and conclusive. This is the substance of the stipulation in the contract before us between the contractor with the company and his sub-contractor, the plaintiff below.

On the trial below the plaintiff claimed for bridge masonry at the rate $10 or $12 per cubic yard for "ashler range masonry." The contract was $5.80 for "hammer dressed ashler broken range." The contract quality was changed by the engineer from this species of work to "ashler range," for which in the final estimate he was allowed $6.80 per cubic yard, being an advance on account of the change of $1.30 per cubic yard. The allowance was final if the engineer had authority to make the change; and if there was on fraud or mistake, that he had the authority to make the change, the contract is express. It

[O'Reilly *v.* Kerns.]

says: "And further, that any alterations in the form or materials which may be directed in writing by said engineer shall be made by such contractor as directed."

It cannot be denied that alterations in the particulars mentioned, when executed by the contractor in obedience to his engagement to make them, are made under the contract. The contractor is by the very terms of his contract, as the portion above quoted shows, bound to do the work as directed. Alterations, therefore, when directed and executed, are as much within the contract as any other part of the work. This gives jurisdiction to the engineer to determine and estimate the allowance incident to the change; and if fair, or rather, not fraudulent, which was not pretended, is conclusive. "He (the engineer) shall," says the contract, "in all cases decide every question which can or may arise relative to the execution of the contract." Then his decision is to be final and conclusive. The question of compensation necessarily arose in this case as incident to the change, and we see in the final estimate it was considered, and an allowance of $1.30 per cubic yard made in consequence of it.

The alteration did not abrogate the contract or substitute a new one. It was part of the original contract that alterations might be made, and which the contractor bound himself to execute, not as a new contract, but under a stipulation in the original contract. We think this very clear, and that the learned judge erred in his ruling on this point, and for this the judgment must be reversed.

We see no error in the 2d assignment. Certainly for work done outside of the contract the engineer had no jurisdiction to determine anything about it. It is alleged that the work claimed for, under this branch of the case, was after the completion of the work under the written contract, and after it had been taken off the contractor's hands. If, therefore, it was extra work not paid for, the plaintiff had a right to claim for it in this action. Indeed, the plaintiff in error submitted no argument on this part of his case. We discover nothing wrong in it, but the first assignment of error being sustained, the judgment is reversed and a *venire de novo* awarded.