## L. W. BROWN ET AL. v J. A. DECKER.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS No. 3 OF PHILADELPHIA COUNTY.

Argued April 8, 1891—Decided May 27, 1891.

[To be reported.]

(a) The defendant, the contractor for the erection of a building, sub-let a part of the work to the plaintiff. The sub-contract provided that the specifications annexed to the principal contract, their terms and conditions, should be considered " as if hereto attached; " and that the sub-contractor should be subject to all the terms and restrictions of the principal contract:·

1. By these stipulations, the contract between the plaintiff and defendant was completely subjected to all the provisions of the principal contract between the defendant and the owner of the property, so far as the part of the work sub-let was concerned, with the same effect as if such provisions had been literally and bodily incorporated into the former.

2. Wherefore, as the principal contract and specifications contained provisions that any dispute between the parties, touching the contract or its requirements, should be submitted to the architect, whose decision should be final, the plaintiff could not maintain a suit at law upon the sub-contract, to determine a dispute as to the character of his work done thereunder.

3. Such a dispute, arising between the contractor and sub-contractor, was exclusively within the jurisdiction of the architect, even though it related in part to a claim of the sub-contractor, that defects in the work, if any, were caused by the fault of the contractor, and notwithstanding the sub-contract reserved to the contractor the right to sue for any damages which could not be covered by recoupement.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 300 January Term 1891, Sup. Ct.; court below, No. 803 June Term 1888, C. P. No. 3.

On August 31, 1888, L. W. Brown and William L. Hendrickson, trading as Brown & Hendrickson, to the use of William L. Hendrickson, brought assumpsit against John A. Decker, to recover a balance averred to be due to the plaintiffs from the defendant for work done under a contract. Issue.

At the second trial, on May 1, 1890, the following facts were shown:

The defendant Decker, on June 7, 1887, entered into a written contract with the trustees of the Stevens Institute of Technology by which he undertook to construct for them high-school buildings at Hoboken, N. J., under the supervision of Wilson Brothers & Co., architects, and in accordance with certain plans and specifications attached to and forming part of the agreement. The contract contained the following clause:

"And it is mutually agreed and distinctly understood that the decision of the engineers and architects shall be final and conclusive in any dispute which may arise between the parties to this agreement, relative to or touching the same; and each and every of said parties do hereby waive any right of action, suit, or suits, or other remedy in law or otherwise, by virtue of said covenants, so that the decision of the said engineers and architects shall, in the nature of an award, be final and conclusive on the rights and claims of said parties."

The specifications provided that the architects should have full power to reject any materials they might deem unsuitable, or not in strict conformity with the spirit of these specifications, and also to cause any inferior or unsafe work to be taken down and altered at the cost of the contractor.

Under the heading "Form of Bid," the specifications contained the following provision:

"Also, that any disagreement or difference between the owners and contractor, upon any matter or thing arising from these specifications or the drawings to which they refer, or the kind or quality of the work required thereby, shall be decided by the engineers and architects, whose decision and interpretation of the same shall be considered final, conclusive and binding upon both parties."

Statement of Facts.

On October 7, 1887, a written contract was made and executed by the defendant, as party of the first part, and the plaintiffs, as parties of the second part, which recited that the party of the first part had entered into the contract of June 7, 1887, for the construction of said high-school buildings, "according to certain plans and specifications, their terms and conditions, therein referred to, which said plans and specifications, their terms and conditions, are to be considered as if hereto attached, all information concerning the same being known to the said parties of the second part;" that a part of the work of such construction had been sub-let by the defendant to the plaintiffs; and that it had been agreed "that, as to so much thereof as has been thus sub-contracted for, the said parties of the second part, for the consideration hereinafter named, are, as between themselves and the said party of the first part, to stand in the place of the latter, and to do everything in, about and concerning the same, as is provided in said party of the first part's contract with said the trustees of the Stevens Institute of Technology, subject to all its terms and restrictions, so that the party of the first part shall be indemnified and saved harmless from all loss, costs and charges in and about said portion of work and materials."

The sub-contract then specified the parts of the work to be done by the plaintiffs, in which were included the plastering and the black-boards, and the price to be paid therefor, etc.; stipulating that all materials and work should be "furnished and performed to the fullest extent that the said party of the first part, under his contract with the said the trustees," etc., "can be obliged to furnish and perform the same." It was also stipulated as follows:

"It is further agreed that, if the said parties of the second part shall get behindhand in their portion of the job, so as to prejudice the probability of the said party of the first part being able to finish at the time designated, or if the said parties of the second part shall furnish defective materials or do bad work, it shall be lawful for the said party of the first part, at his option, either to put on such men and supply such materials as shall be needed, at the expense of the said parties of the second part, or to cancel the residue of this sub-contract, and to proceed to finish the same by other parties, with the right

Charge of Court below.

to retain the damages thereby occasioned to him the said party of the first part out of any moneys in his hands to said parties of the second part belonging, and to sue for any loss which he the party of the first part may not be able thereby to cover. The same right shall be possessed by the said party of the first part, in case of the failure of said parties of the second part faithfully and punctually to perform any of the other covenants herein contained."

The plaintiffs went to work under their contract. The testimony for the defendant tended to show that their work was done in such a defective and unworkmanlike manner that the plastering, when dried, was discolored in spots, marring the appearance of the rooms, and that the blackboards peeled off; that the architects refused to approve said work, and required that its defects be remedied; that the plaintiffs refused to remedy them, after notice from the defendant so to do, and the defendant was obliged himself to remedy the defects, at a cost which exceeded the sum sued for. The plaintiffs admitted the existence of the defects mentioned, but presented testimony tending to show that they resulted in part from a lack of steam-heat in the building, which the defendant's agent had promised to supply, such lack causing the plastering to become frosted; and, in part, from acts of the defendant's workmen, done after the completion of the plaintiffs' work. Testimony for the defendant tended to rebut these allegations. The plaintiffs admitted that they had never submitted, or offered to submit to the architects, the dispute between them and the defendant as to whose fault occasioned the defects in question.

The testimony being closed, the court, GORDON, J., charged the jury in part as follows:

The defendant requests the court to instruct you:

1. It is admitted, in this case, that there is a dispute between the plaintiffs and defendant, as to the character of plaintiffs' work. If you find that this dispute was substantial, then, under the terms of agreement, the decision of the architects is conclusive of this dispute; and if you find the architects have decided that plaintiffs' work was not well done, then plaintiffs cannot recover here.

Answer: I have already told you, that would be so if the defects did not arise from the defendant's negligence.[2]

2. If you find that the plaintiffs did not do the work to the satisfaction of the architects, but refused or neglected to do this plastering work in accordance with the instructions of the architects as they had agreed, then your verdict should be for the defendant.

Answer: I instruct you that, if the plaintiffs refused to do the work in accordance with the specifications, that would be so.[3]

4. Under all the evidence your verdict should be for the defendant.

Answer: I decline that.[4]

Gentlemen: This is an action brought to recover the contract price of certain work done by plaintiffs under a written contract. By the terms of that contract the original contract of defendant with the trustees of Stevens Institute is binding upon plaintiffs, so far as the specifications relate to the work to be done by plaintiffs. By the terms of these contracts, disputes between the parties were to be referred to the architects. The work done was not satisfactory; confessedly so. It is in evidence that spots appeared in the walls, which had to be calcimined, to take them out. This work, it must be granted, was badly done. Did it result from the acts of the defendant?

[While it is true, according to the contract, disputes about the work must be referred to the architects, and plaintiffs would be obliged to refer disputes to them, this only applies to the interpretation of the contracts, and not to defective work which might flow from defendant's acts.][1] It does not exempt defendant, if the spots came from his negligence, or if it came from causes over which plaintiffs had no control. You will inquire whether the defects were from bad workmanship.

Now, it is alleged by the plaintiffs that Knowles, who was defendant's agent, said that there would be steam-heating. The verbal statement of Knowles to vary this written contract would depend upon whether it would come within certain exceptions. If you should find that Knowles did agree that steam-heating should be put in, then it was binding upon Decker. It is a principle of law that where an agent has general authority he has general power, and if he was defendant's agent at the time of making this contract, what he said in this regard binds defendant.

Did the absence of steam-heating cause these defects? If it did, and Decker agreed to put it in, then he is liable. You will inquire the cause. Did it come from the bricks or from something in the materials? Plaintiffs cannot recover if it came from defects of their own causing. If the plaster froze after plaintiffs finished and left the building, then plaintiffs would not be responsible. There is nothing to show that plaintiffs were to keep the heat in. As to the blackboards, the testimony is of a different character. The defendant's testimony shows they were not good; while plaintiffs say the silicate was good, they say the defects resulted from the freezing of the walls. I ought to say to you that if plaintiffs told defendant before he completed the work that it would be defective without proper heating to dry it, and defendant relieved plaintiffs, why, of course, that would excuse plaintiffs of results. If, however, these defects were properly chargeable to plaintiffs, and the defendant was compelled to expend certain sums to remedy such defects, then, to the extent of such expenditures, defendant is entitled to an allowance.

—The jury returned a verdict for the plaintiffs for $262.77. A rule for a new trial having been discharged, judgment was entered upon the verdict on July 24, 1890; whereupon the defendant took this appeal, assigning for error:

1. The part of the charge embraced in [ ] [1]

2–4. The answers to the defendant's points.[2 to 4]

*Mr. William H. Peace,* for the appellant:

It was conceded that the plaintiffs' work was badly done; that the defendant was compelled to replace it at a cost exceeding the plaintiffs' claim, and that the plaintiffs have not submitted the matter to the architects for decision. Upon the undisputed facts, the plaintiffs have no right to sue on the contract, but must resort to the forum by which they agreed to be bound: Hartupee v. Pittsburgh, 97 Pa. 107; O'Reilly v. Kerns, 52 Pa. 214; Reynolds v. Caldwell, 51 Pa. 298.

*Mr. S. Morris Waln,* for the appellees:

That the plaintiffs fully performed their part of the contract, has been settled by the verdict. The only question now presented is, whether they can maintain a suit upon the contract

Opinion of the Court.

without a decision by the architects. The contract between the plaintiffs and the defendant contains no provision for the submission of disputes to the architects, but on the contrary expressly provides that the defendant shall have a right to sue, upon failure of the plaintiffs to perform any of their covenants. This is not a suit against the trustees of the Stevens Institute. If it were, a different question would be presented. Moreover, the testimony shows that the defects in the work were the result of the acts and default of the defendant and his agents.

OPINION, MR. JUSTICE GREEN:

The defendant, being a contractor for the erection of a large building at Hoboken, N. J., made a sub-contract with the plaintiffs to do the plastering work of the building. The contract between the parties, which was in writing and under seal, contained the following recital and condition, to wit: "Whereas, the said party of the first part (defendant) has entered into articles of agreement with the trustees of the Stevens Institute of Technology, at Hoboken, N. J., bearing date June 7, 1887, for the construction and completion of certain high-school buildings at Hoboken, according to certain plans and specifications, their terms and conditions therein referred to, which said plans and specifications, their terms and conditions, are to be considered as if hereto attached, all information concerning the same being known to the said parties of the second part.

After reciting that the parties had agreed upon a sub-contract for part of the work, the agreement proceeds: "And whereas, it has been agreed that, as to so much thereof as has been thus sub-contracted for, the said parties of the second part (plaintiffs), for the consideration hereinafter named, are, as between themselves and the said party of the first part, to stand in the place of the latter, and to do everything in, about, and concerning the same, as is provided in said party of the first part's contract with the said trustees of the Stevens Institute of Technology, subject to all its terms and restrictions, so that the said party of the first part shall be indemnified and saved harmless from all loss, costs, and charges in and about said portion of work and materials: Now, this agreement witnesseth," etc.

The third clause of the agreement provides that the plaintiffs shall supply all materials and do all the work according to

the requirements of the original contract between the defendant and the institute, so that the defendant shall be enabled to complete the buildings in the time stipulated by the contract, the materials and workmanship shall be of the best quality, "and shall be furnished and performed to the fullest extent that the said party of the first part under his contract with the said trustees of the Stevens Institute of Technology can be obliged to furnish and perform the same."

Other provisions of a similar character are contained in the agreement, fully subordinating it to the operation and effect of the principal contract between the defendant and the trustees of the institute.

It cannot be doubted, therefore, that the contract between the present parties was completely subject to all the provisions of the principal contract, so far as the plastering was concerned, with the same effect as if they had been literally incorporated into the present contract. The language is, "their terms and conditions are to be considered as if hereto attached," and the plaintiffs "to stand in the place of the latter," (defendant) and be "subject to all its terms and restrictions."

One of the provisions of the principal contract is in these words: "And it is mutually agreed and distinctly understood that the decision of the engineers and architects shall be final and conclusive in any dispute which may arise between the parties to this agreement, relative to or touching the same; and each and every of said parties do hereby waive any right of action, suit or suits, or other remedy in law or otherwise, by virtue of said covenants, so that the decision of the said engineers and architects shall, in the nature of an award, be final and conclusive on the rights and claims of said parties." In that part of the annexed specifications which relates to the form of bid the following clause is contained: "Also that any disagreement or difference between the owners and contractor upon any matter or thing arising from these specifications, or the drawings to which they refer, or the kind or quality of the work required thereby, shall be decided by the engineers and architects, whose decision and interpretation of the same shall be considered final, conclusive, and binding upon both parties." We are clearly of opinion that both of the foregoing provisions of the principal contract are to be considered as of the same

Opinion of the Court.

legal effect as if they were bodily incorporated into the contract between the present parties, and it only remains to consider what effect they have in determining the present contention.

In the case of Reynolds v. Caldwell, 51 Pa. 298, in which the subject of contention arose out of a contract between a principal contractor for work on a railroad and a sub-contractor under him, the final clause of the contract was in the exact words of the final clause of the principal contract in the present case. A dispute having arisen between the sub-contractor and the principal contractor, the former brought an action of covenant on the contract between them, and sought to recover damages for its breach. A recovery having been obtained, the cause was removed to this court, where the judgment was reversed in an exhaustive opinion by Mr. Justice STRONG, who held that no action at law could be maintained upon the contract, but that the parties must resort to the tribunal appointed by the agreement. He further held that, even if the final estimate was erroneous, and the contractor's covenants were broken, and although recourse to the tribunal selected was not reasonably possible, and although the engineer refused to act, and although there were such gross and palpable mistakes in the estimates as amounted to fraud in the engineer, the agreement of submission was binding, and the remedy was only by action against the engineer, and not by an action on the contract. In the course of the opinion, STRONG, J., said: "Provisions similar to this are often introduced into such contracts, and they have been more than once under consideration in this court. Even when much less stringent than the present, they have been held effective to preclude any resort to an action at law."

In O'Reilly v. Kerns, 52 Pa. 214, THOMPSON, J., said: "It is not necessary to cite authorities for what is so well settled, as that where a railroad or canal company and its contractors, or in a contract between original and sub-contractors, it is agreed that to prevent disputes the engineer of the work shall in all cases determine the amount or quality of the several kinds of work which are to be paid for under the contract, and decide every question which can or may arise relative to the execution of the contract on the part of the contractor, that his decision has been uniformly held to be final and conclusive." The same

Opinion of the Court.

doctrine was applied and enforced in Hartupee v. Pittsburgh, 97 Pa. 107, in which we held that the right of action was waived under the stipulation to that effect in the agreement.

In the present case, all right of action was waived in the precise terms contained in the agreement under consideration in the case of Reynolds v. Caldwell, supra, and we know of no reason why we should not follow that ruling. The learned judge of the court below, while recognizing the doctrine, declined to apply it, for the reason that the stipulation only applied to the interpretation of the contracts, and not to defective work which might flow from defendant's acts. We are unable to agree to that view. There is no such restriction contained in the contract. There was a clear and well-defined dispute between the defendant and the plaintiffs as to the character and quality of the plastering and blackboard work done by the plaintiffs, the defendant alleging that it was defectively done. There seems to be no doubt that there were serious defects in the work, which the defendant was obliged to correct at his own expense. But the plaintiffs claimed that the defendant had failed to furnish steam-heat to dry the rooms, and that this caused the defects in question. The defendant replied that he was not bound to furnish steam-heat, and that the plaintiffs did not ask him to do so; and he also testified that the work was badly done. Thus the parties were at issue upon the question of the character and quality of the work done, and that question was one which was not only within the proper function of the architects, but was exclusively within their jurisdiction to hear and determine.

It may be conceded that the dispute included an alleged fault of the defendant, but the trial of that question was not taken away from the selected tribunal; and, as it came within the category of "any dispute which may arise between the parties to this agreement," it was just as certainly embraced within the jurisdiction conferred upon the arbitrators as any other question touching the character of the work. The case of Reynolds v. Caldwell goes very much further than it is necessary to go in this case, denying the right of any action on the agreement. To hold that if a jury, in an action on the contract, should determine that the defects in controversy were in any manner traceable to the negligence of one of the parties, al-

Opinion of the Court.

though such alleged negligence was denied and formed part of the dispute, therefore the reference to the engineer or architect must be abrogated, and the waiver of all right of action, suit, or other remedy stricken out of the contract, would make the question of jurisdiction depend, not upon the agreement of the parties, but upon the finding of the jury on one of the disputed facts. We cannot agree to such a result. The appellees suggest that a right to sue was reserved in the contract, and therefore, the reference to the engineer is avoided. But the right to sue is given only to the defendant, and it is limited to the recovery of any money which he could not recover, by withholding out of the money payable under the contract the damages he might suffer from the plaintiffs' defective performance. We are clearly of opinion that all right of action on the contract was waived, except to recover upon an award made by the engineers and architects, and, as there was nothing of this kind in the case,

The judgment must be reversed.