General State Authority, to use, *v.* John McShain, Inc. et al., Appellant.

Argued October 13, 1941.

Before CUNNINGHAM, BALDRIGE, STADTFELD and HIRT, JJ.

*Vincent P. McDevitt*, with him *F. Brewster Wicker-sham*, for appellant.

*William W. Litke*, of *Fleming & Litke*, with him *McNees, Hollinger & Nurick*, for appellee.

OPINION BY CUNNINGHAM, J., April 14, 1942:

A defendant in an action of assumpsit pending in the court below has appealed from an order of that court directing that the controversy involved be submitted to arbitration.

These material facts appear from the petition, answer, and replication:

On December 31, 1937, The General State Authority of the Commonwealth entered into a contract with John McShain, Inc., the appellant herein, for the construction, alteration and repair of Harrisburg State Hospital for a consideration of $567,200; United States Fidelity and Guaranty Company became surety upon the "Labor and Materialmen's Bond" required of the general contractor.

Under date of January 17, 1938, John McShain, and Fred Dunzik, appellee herein, executed a subcontract wherein Dunzik agreed to furnish all labor and material necessary to complete the *painting* and *finishing*, shown on the plans and called for by the specifications upon which the main contract was based, for the sum of $13,250, and to furnish extra labor and materials when requested.

The following provision for arbitration was inserted as Article XXI of the subcontract: "In case the parties hereto disagree in relation to any clause in this con-

tract, the question shall be referred to a Board of Arbitration consisting of three disinterested parties, one nominated by contractor, one by subcontractor, these two to select a third. The decision of any two of this Board shall be final and binding on both parties hereto. Each party hereto shall pay one-half of the reasonable expense of such reference. The subcontractor represents this article and contract to be valid under the laws of Pennsylvania. If so valid, laws of Pennsylvania shall govern the interpretation of this contract."

In August, 1940, Dunzik, contending that although he had fully performed his obligations under his subcontract McShain refused to pay him a balance of $1580, due him for labor and materials furnished under the plans and specifications, and a balance of $273.71 for extras, or a total amount of $1853.71, issued, as use-plaintiff, a summons in assumpsit out of the court below against McShain and his surety, United States Fidelity and Guaranty Company.

After service of the summons and before filing his statement of claim, Dunzik, invoking the above quoted provision of his subcontract, presented his petition to the court below, under Sections 2 and 3 of the Act of April 25, 1927, P. L. 381, 5 PS §§162-163, reciting the existence of the alleged indebtedness to him under the subcontract, averring the refusal of McShain to submit the matters in dispute to arbitration, and praying for a rule to show cause why such arbitration should not be ordered.

To the rule McShain answered, in substance, that Dunzik did not do all the painting he was required to do under the terms of his subcontract, particularly in the Laundry Building; that the matter of the quantity of painting specified for that building had already been arbitrated under the provisions relative to arbitration contained in the *main* contract and determined adversely to Dunzik's contentions; and that McShain had been

required to incur expenses ($1,038.50 for labor, $728.89 for materials, and over $86.32 for incidentals, or a total of $1,853.71) in consequence of Dunzik's failure fully to perform his subcontract. Attached to the answer was a copy of the award under the main contract.

In his replication Dunzik denied any arbitration had been had of his dispute with McShain under their subcontract.

The court below, being satisfied from its examination of the pleadings that the making, in the subcontract, of the agreement for arbitration and the refusal of McShain to comply therewith were not at issue, (Sec. 3 of the Act of 1927, supra, 5 PS §163) entered its order on July 11, 1941, directing the parties to proceed with the arbitration in accordance with the terms of the subcontract. The present appeal was taken by McShain from that order.

The principal ground upon which appellant seeks to justify his refusal to arbitrate the controversy between appellee and himself under the provisions of the above quoted Article XXI of the subcontract is that the matters involved were adjudicated in November, 1939, in an arbitration, conducted in accordance with Section 75 of the general conditions of the main contract, between appellant and the State Authority; and that appellee is bound by that arbitration. The section reads:

"75. In the event of a disagreement between Contractor and the Authority in respect to the interpretation of the contract, such disagreement shall be submitted to the Executive Director of The Authority and to the General Counsel of the Authority whose decision and award shall be final and binding on the parties hereto. All costs to be borne equally by the parties at interest."

The difficulty with the appellant's position is that some of the averments of his answer relative to this

matter are not supported by the exhibits attached to the pleadings.

His counsel argue that Section 75 of the general conditions of the main contract was incorporated, by reference, in the subcontract and thereby became the controlling "provision" for arbitration, within the meaning of Section 1 of the Act of 1927, supra, 5 PS §161.

Reliance is placed upon these provisions of Article II of the subcontract:

"The Sub-Contractor shall provide all the materials and appliances and perform all the labor required to complete and will complete the furnishing and delivery of all material and labor to complete the painting and finishing, ...... in connection with the building of Harrisburg State Hospital, Harrisburg, Pa. Pa. 1838-D as shown on the plans and/or called for by the specifications and addenda thereto Bulletins 1 & 2 and including the General Conditions as prepared by Architect and in strict conformity therewith. A set of these specifications and drawings shall be kept on file in the office of the Contractor, and shall be considered as part of and illustrating this agreement. Any work shown on drawings, though not mentioned in specifications, or described in specifications and not shown on drawings, shall be executed as part of this contract and said plans and specifications shall be construed as supplementing one another. The said general conditions shall govern and apply to this sub-contract.

"Reference is hereby made to certain addenda which addenda designated as Bulletins 1 & 2 are made a part of this agreement."

If the foregoing were the only provision in the subcontract relative to arbitration there would be force in their contention. But it is not the only provision. The parties to the subcontract expressly agreed, as we have seen, in Article XXI of their subcontract for arbitration of any disagreement arising under it before a different "Board of Arbitration"— a board consisting of

three disinterested persons, one to be nominated by each party and their nominees to select the third.

We think the parties to the subcontract were at liberty to insert therein any "provision" they deemed appropriate "to settle by arbitration [any] controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof." See Section 1 of the Act of 1927, supra.

Paragraphs three and four of appellant's answer read:

"3. Arbitration has already been had under said provision of the general conditions, and construction of the specifications has already been made by the Board of Arbitration in accordance with Section 75 at page F-19 of the said general conditions. A copy of said decision is attached hereto, made part hereof and marked Exhibit "B". The decision is that the use-plaintiff *was in default of his contract,* which made it necessary for the general contractor to stand responsible for said default.

"4. The use-plaintiff had due notice of the said arbitration under the general conditions and appeared at the hearing in person and by counsel." (Italics supplied.)

Appellant's Ex. B. and appellee's Ex. 1, attached to his replication, cast a different light upon the arbitration between appellant and the State Authority. That was an arbitration in November, 1939, before the Executive Director and General Counsel of the Authority of a dispute between appellant as the general contractor and the Authority, thus defined by the arbitrators:

"During the progress of the work a dispute arose between the Authority and the Contractor as to whether or not the Laundry Building was to be painted in its entirety, both exterior and interior, or only those portions where new work was done in the building by the Contractor. The Authority contended that the Contractor was bound, under his Agreement, to paint the

exterior and interior of the building, being three (3) floors in number, and called upon the Contractor to do so. The Contractor contended that his Agreement only required him to paint so much of the interior of the building as was new work and that he was not obligated to refinish or paint the existing work."

After stating their various findings of fact, the arbitrators made the following award:

"After careful consideration of the contract documents, the facts, circumstances and the law applicable thereto, it is our decision, and we hereby so decide that the Contractor shall paint the entire exterior and interior of the Laundry Building, *except to such extent as The General State Authority has indicated its willingness to permit the Contractor to eliminate* the painting required, providing the Contractor *allows a credit* to the Authority representing the *savings* to the Contractor by virtue of the elimination of said work." (Italics supplied.)

There is no reference whatever to appellee in any part of these arbitration proceedings, let alone any finding that he "was in default of his contract," as averred by appellant. Commenting upon the award, Fox, A. L. J., speaking for the court below, said: "We have no information as to whether or not such an agreement was entered into. If it was, it may have a bearing on the instant controversy and if arbitration is ordered, the arbitrators will be empowered to make inquiry into it."

Appellant's answer is silent with respect to the amount of painting he was permitted to eliminate, and the award furnishes no basis for his averment therein that he was required to incur under the award expenses exceeding $1,800. These matters would also come within the scope of an arbitration under the subcontract.

The intimation in appellant's answer that appellee is bound by the result of the arbitration of the State Authority with appellant is not based upon a full

statement of the facts. As appears from Ex. 1 to the replication, the arbitrators did not consider appellee a party to that proceeding. A letter from the Executive Director to counsel for appellee under date of October 9, 1939, reads:

"Gentlemen:

Regional Director, F. O. Durfour, has referred here, copy of letter addressed him by you in connection with painting of Laundry at the Harrisburg State Hospital, Docket No. Pa. 1838-D.

While the Authority has nothing whatever to do with the controversy between Mr. Fred Dunzik of Philipsburg, Pa., and John McShain, Inc., General Contractors, we have set Wednesday, October 18th, at 3:30 p.m., as a time to discuss this matter with Mr. McShain and if you desire, Mr. Dunzik, can be represented at this meeting."

We think it is clear from the uncontradicted averments of the pleadings that appellee was neither a party to, nor in any way bound by, the arbitration between appellant and the State Authority.

It is now well settled that contracts containing clauses providing for the settlement of disputes arising thereunder by arbitration are valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract: *Britex Waste Company Ltd. v. Nathan Schwab & Sons, Inc.*, 139 Pa. Superior Ct. 474, 12 A. 2d 473, and cases there cited; *Kuzmen v. Kamien et ux.*, 139 Pa. Superior Ct. 538, 12 A. 2d 471; *J. M. Davis Co. v. Shaler Twp.*, 332 Pa. 134, 2 A. 2d 708; *Pierce Steel Pile Corp. v. Flannery*, 312 Pa. 5, 167 A. 276.

In neither of the cases chiefly relied upon by appellant for the proposition that a subcontractor is generally bound by stipulations in the main contract for arbitration, or approval of the work by an architect, engineer, etc.,—*Brown v. Decker*, 142 Pa. 640, 21 A. 903, and *Warner Const. Co. v. Louis Hanssen's Sons*, 20 F.

(2d) 483 (C. C. 8th, 1927)—did the subcontract contain an express provision for the arbitration in a specified manner of controversies arising out of the subcontract.

We are not convinced the court below erred in entering the order appealed from.

Order affirmed.